Beisel v. Crosby.

---

I. L. BEISEL ET AL., APPELLEES, v. WILLIS C. CROSBY, APPELLANT.

FILED JUNE 7, 1920. No. 21492.

Nuisance: FUNERAL HOME: INJUNCTION. Where an undertaker purchases and uses for a funeral home in a city a dwelling-house

situated within a few feet of private dwellings in an exclusive residential district, in disregard of timely protest by residents thereof, and thus encroaches on the repose, the comfort, and the freedom of their homes, depreciates the value of their property, depresses their spirits, and weakens their power to resist disease, injunction is their proper remedy, but the allowance of the writ depends upon the facts and the circumstances of the particular case considered.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Affirmed.*

*Switzler & Switzler,* for appellant.

*Baker & Ready, contra.*

ROSE, J.

This is a suit for an injunction to prevent defendant from conducting an undertaker's establishment at No. 2020 Wirt street, Omaha. The name given by defendant to his place of business is ''Crosby's Funeral Home.'' His building was formerly occupied as a private residence. It is situated in what is known as ''Kountze Place,'' and 80 residents thereof are plaintiffs. They plead that defendant, in disregard of timely protest, is conducting his undertaking business in a residential district, is encroaching on the repose, the comfort, and the freedom of their homes, is depreciating the value of their property, is constantly reminding them of death, of preparations for the tomb, of the sorrow of mourners, of the requiem, and of the funeral cortege, and is thus depressing them mentally and weakening their power to resist disease. Interference by injunction is resisted by defendant on the ground that other business enterprises are creeping into Kountze Place; that the homes of plaintiffs are not in a district devoted exclusively to residences; that the present conditions of society and the advancements in modern undertaking demand funeral homes properly conducted in quiet places away from congested centers; that funeral homes are properly and frequently located near

residences; that defendant preserves the residential appearance of his building and grounds; that he performs the duties of undertaker according to modern methods and ethics, in strict conformity with law and with the rules of the board of health; that he is not maintaining a nuisance; and that an injunction would deprive him of his right to own property and to use it in a legitimate and a necessary business. On the principal issues the trial court found the facts to be as pleaded by plaintiffs and allowed an injunction as prayed by them. Defendant has appealed.

The question presented by the appeal is the equitable right of plaintiffs to an injunction on the facts established by the evidence. Originally Kountze Place was a quarter section of land platted as an addition to Omaha. The deeds for the lots limited the grant to residential purposes for 25 years. With this common purpose Kountze Place became an exclusive, compact, residential district, where there are paved streets, ornamental grounds, well-kept lawns, private driveways, and beautiful homes. In the pursuit of health, recreation and happiness, families resorted to open porches and children played on lawns. In the midst of these homes and grounds defendant bought a large, handsome residence after the limitation restricting the use of the lot to residential purposes had expired. Over the protest of plaintiffs, defendant occupies and uses this residence for an undertaking establishment. In front of it he erected a sign four feet high and nine feet long, advertising the premises before their eyes as "Crosby's Funeral Home." In addition, he has constructed and intends to maintain an electric sign. There is an operating and embalming room in the basement, where the dead are prepared for burial. To and from the premises an automobile hearse, with unavoidable noises, is driven night and day. Mourners and friends of the dead visit the place. The building is used as a chapel, where sermons are delivered and dirges are sung. Fu-

nerals are weekly occurrences, and there were as many as two services in one day. The congestion in the street more than once prevented neighbors from stopping automobiles in front of their own doors. Boxes used to protect caskets are piled on the grounds of the funeral home in view of the public. The dead are carried to and from the hearse a few feet from the windows in the home of one of the plaintiffs. Flowers intended for the funeral home have sometimes been delivered by mistake at private residences. Complete freedom and full enjoyment of home life in the neighborhood have been lost. Lawns, porches, and front rooms have in some instances been partially abandoned, and property in the vicinity has decreased in value. There is a natural shrinking from the scenes and the sounds at the funeral home. Respect for the presence of the dead and for the mourners at funerals grows out of gentle manners and good impulses and influences human conduct. Recurring changes from happy demeanor in private homes to solemnity in the presence of death affect the spirits of rightly constituted individuals, both old and young. The business which defendant conducts among the homes of plaintiffs will tend to depress them mentally, to lower their vitality, and to weaken their power to resist disease. With full knowledge of their protest, the conditions of which they complain were forced upon them by defendant. In the exercise of their right to life, liberty, and the pursuit of happiness, they had united as a community in a lawful purpose to confine their district to residential purposes. On these facts and conclusions are plaintiffs entitled to equitable relief?

Defendant contends that plaintiffs are not entitled to an injunction on the ground that Kountze Place is devoted exclusively to residences. He testifies that business is creeping in; that his funeral home is within one and one-half blocks of a garage, within two blocks of an automobile filling station, and within three blocks of a

grocery.  Accepting his word in these respects as verity, he nevertheless invaded a district hitherto devoted exclusively to beautiful residences.  Furthermore, the most serious objections to his funeral home do not apply to the other enterprises mentioned by him.  On the record made the district selected by defendant for business purposes was formerly residential.

It must be conceded, as insisted by defendant, that undertaking is a necessity, and that individuals and public alike must submit to the unavoidable incidents of the business when conducted according to approved methods and advancements in science.  Undertaking has an intimate relation to all who are distressed by the death of loved ones and must always be considered in connection with public health.  It would be unfortunate, therefore, if either the state, in the exercise of police power, or the court, by means of injunction, should put unnecessary restraints on the class of private and public services performed by defendant, or lower the standards or efficiency of embalmers and undertakers, or deter men of high character from entering such vocations.  The selection of the place of business, however, is not necessarily left to the undertaker alone.  That subject is often a matter of both private and public concern.  No amount of skill or tact can wholly eliminate the depressing influence of the business of undertaking or its effect upon public health.

The constitutional or fundamental liberty of a citizen to consult his own tastes in selecting a lawful vocation and in buying and using property is limited by the obligation which his citizenship imposes upon him to respect the equal rights of others.  The Republic came into existence with a declaration expressing "a decent respect to the opinions of mankind."  Blasphemy, resulting only in the mental suffering of an individual who is shocked by it, is not the exercise of the liberty of citizenship or of the freedom of speech.  A law forbidding the desecration of the flag protects the patriotic

sentiments of citizens from outrage. The constitutional liberty of a citizen, including his right to buy and control land, does not permit him to construct on his own premises an unsightly and an unnecessary fence for the sole purpose of injuring the feelings of a neighbor. These principles recognize the mental factor in considering the rights which the Constitution guarantees to citizens. In a proper case a court of equity may consider the same subject. Though defendant was not prompted by malice or by any evil design, and meant only to exercise the privileges of citizenship, he failed to show proper respect for the property rights and the personal feelings of plaintiffs when he opened his undertaking establishment in their midst. He was in the wrong when he encroached on the repose, the comfort, and the freedom of their homes, depreciated the value of their property, depressed their spirits, and weakened their power to resist disease. His business was not a necessity at the place selected by him. He equipped his funeral home at his peril, after he had been warned by plaintiffs of their objections. Under all of the circumstances the injunction was properly allowed. There is no fixed or arbitrary rule, however, governing cases of this kind. Each case must be determined by the facts and circumstances developed therein.

                                                        AFFIRMED.

ALDRICH, J., not sitting.