# CITY OF ST. PAUL v. JOHN W. KESSLER AND ANOTHER.[1]

## June 11, 1920.

## No. 21,768.

**Municipal corporation — restricted residence district — objectionable business.**

1. Chapter 128, Laws 1915, empowering cities of the first class to establish residential districts by the use of the right of eminent domain, did not take away or impair the authority theretofore granted such cities to regulate, restrict or prohibit within certain districts occupations or businesses which therein may be considered nuisances.

**Nuisance — ordinance prohibiting undertaking shops valid.**

2. Undertaking establishments and so-called funeral homes may properly be *held* a nuisance in districts of a city occupied exclusively for residences, and an ordinance prohibiting them therein is valid, provided the city has been granted the authority to restrict or prohibit nuisances.

**City of St. Paul has authority to prohibit nuisances.**

3. The city of St. Paul has been granted such authority by its charter.

**Decision sustained.**

4. The stipulated facts warrant the conviction.

Defendants were arrested upon a complaint charging them with violating the city ordinance mentioned in the first sentence of the opinion. In lieu of the taking of testimony in the muncipal court of St. Paul the facts were stipulated by the parties. The court, Finehout, J., found the ordinance valid and the defendants guilty as charged in the complaint. From the judgment of conviction, defendants appealed. Affirmed.

*C. D. & R. D. O'Brien* and *Charles L. Hayes,* for appellants.

*O. H. O'Neill* and *Joseph H. Masek,* for respondent.

HOLT, J.

In the municipal court of the city of St. Paul, defendants were convicted of violating an ordinance of the city prohibiting the location

[1] Reported in 178 N. W. 171.

and operation of an undertaking establishment or funeral home in a residence district. They appeal.

Section 1 of the ordinance provides: "No undertaking or embalming business shall be carried on, and no mortuary chapel, funeral home, vault, or other house, building, structure or receptacle for the preparation of the dead for burial or for the reception, deposit, or keeping of the dead bodies of human beings shall be established, opened, kept or maintained in any residence district in the city of St. Paul." Section 2 defines residence districts. Section 3 declares a business conducted contrary to the provisions of the ordinance a nuisance, and section 4 fixes the penalty for a violation.

In the oral argument defendant's counsel pressed most earnestly the proposition that the legislature, when it authorized cities of the first class to create residential districts (chapter 128, p. 180, Laws 1915), took away all other modes of restricting the use of buildings or structures within the municipal territory, and further, since undertaking establishments or funeral homes are not among the structures that may be excluded from residential districts under that act, there is now no way by which they may be barred from any locality. We cannot accept this view. The law referred to is predicated upon a restriction or taking of private property for a public use or purpose under the power of eminent domain. It does not in terms nor by implication curtail the power granted cities, expressly or by implication, to regulate and control occupations liable to become nuisances. We do not think the legislature by the act mentioned intended to trench upon any police power then possessed by cities of the first class. Nor does chapter 128, p. 180, Laws 1915, undertake to prescribe what restricted residence districts shall mean in, or how they shall be created under, any other law or ordinance.

The ordinance is attacked as unconstitutional in that it deprives a person of the free use of his property without due process of law. It can be upheld only if its enactment is authorized by a legitimate exercise of the police power of the city. And that depends on the proposition whether the occupation which it seeks to exclude from residence districts is one liable to become a nuisance, even if properly conducted

therein. The business itself is legitimate and is a necessity. The more dense the population is, the more numerous will be the deaths and funerals. It is not a nuisance per se. But there are numerous occupations and businesses equally necessary and not nuisances per se that a city, acting under its police power, may, without question nowadays, exclude from residential localities because of their proneness to become injurious to health, or offensive to the senses or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, such as slaughter houses, tanneries, brick kilns, mills, laundries, livery barns, and the like. In our opinion the undertaking business may be placed in the same category, and has been so placed by the courts that have passed on the subject, with possibly one exception. Upon complaints by adjoining residence owners, the carrying on of that business in districts of a city occupied exclusively by homes has been enjoined. Densmore v. Evergreen Camp No. 147, 61 Wash. 230, 112 Pac. 255, 31 L.R.A.(N.S.) 608, Ann. Cas. 1912B, 1206; Goodrich v. Starrett, 108 Wash. 437, 184 Pac. 220; Saier v. Joy, 198 Mich. 295, 164 N. W. 507, L.R.A. 1918A, 825. And in Osborn v. City of Shreveport, 143 La. 931, 79 South. 542, 3 L.R.A. 955, an ordinance was held valid declaring it unlawful "to maintain or operate any undertaking shop or parlor, where bodies are embalmed, kept, or prepared for interment, except on the business streets of the city," the city ordinance being enacted under the power conferred upon the city that "all establishments where any nauseous or unwholesome business may be carried on shall be restricted to certain limits within the city, to be determined by the city counsel."

The court said: "We find no reason to doubt that plaintiff conducts his business after the most approved methods and with as little offense to those by whom he may be surrounded as the business will admit; but, to the incidents mentioned [odors from decayed corpses], there is to be added the fact that the business itself is a gruesome one, and that the psychological influence of being confronted, and having one's family confronted, day after day and at all hours of the day, with death, and its woeful trappings in the shape of hearses and other vehicles, carrying in and out of a neighboring building the mortal remains of some fellow-

being, is no more enlivening nor wholesome than would be the constant presence of the same corpse, or the immediate proximity of a graveyard, and we take judicial notice that the introduction of such a business into a residential neighborhood, where none has previously been established, will inevitably depreciate the value of the property as well as discommode the owners."

In Rowland v. Miller, 139 N. Y. 93, 34 N. E. 765, 22 L.R.A. 182, an undertaking business was held to come within a restrictive covenant in a deed against carrying on a trade or business which would be injurious or offensive to the neighbors.

In Saier v. Joy, supra, the court did not find that there was any danger of disease being communicated from the dead, it was not so well satisfied that noxious odors might not escape from the establishment, but what seemed to move the court to grant the injunction was chiefly that "the maintenance of an undertaking establishment and morgue in close proximity to a home would so affect the normal mind as to render its maintenance in a strictly residential district" a private nuisance.

We agree with the courts above mentioned that the ordinary normal person cannot live next door to an undertaking establishment or funeral home, where dead bodies are continuously carried in and out and are kept for longer or shorter periods, without thereby being more or less deprived of the comfortable enjoyment of his home. The business, then, is such that it may be regarded as a private nuisance in residence districts. The only instance to which we have been referred where an injunction was refused is Wescott v. Middleton, 43 N. J. Eq. 478, 11 Atl. 490, but it is to be noted that the locality wherein the undertaking establishment was located was in a populous part of the city, and apparently not in an exclusively residence district.

That the city has ample power to regulate, restrict or prohibit trades or occupations that are likely to develop into nuisances, or are generally considered such when carried on in certain localities, cannot well be questioned. The charter grants the power to enact ordinances "to define, regulate, probibit and abate nuisances" (subd. 6, § 127). "To regulate the location of stockyards, slaughter houses, rendering plants, soap factories, tanneries, stables, privies, and other unwholesome or

nauseous houses or places." (Subd. 11, § 127) Charter. There are other granted powers that may be held to authorize the ordinance in question. State v. Chicago, M. & St. P. Ry. Co. 114 Minn. 122, 130 N. W. 545, 33 L.R.A.(N.S.) 494, Ann. Cas. 1912B, 1030. In 19 R. C. L. p. 818 it is stated: "A municipal corporation under its authorized police power, may regulate any trade, or occupation, or business, the unrestrained pursuit of which might affect injuriously the public health, morals, safety, or comfort, and in the exercise of this power, particular occupations may be excluded from certain parts of the city, or may be required to be conducted within designated limits." And under the general welfare clause, common to all city charters, it was held in State v. Houghton, 134 Minn. 226. 158 N. W. 1017, L.R.A. 1917F, 1050, that "cities may also prescribe districts within which no business or occupation of a noxious or offensive character, or which tends to interfere with the comfort and prosperity of others, may be carried on." In State v. Houghton, 142 Minn. 28, 170 N. W. 853, an ordinance excluding a cereal mill from what had been declared to be a residence district was sustained as being a proper exercise of the police power for the general welfare.

In this case the ordinance defines the residence districts from which undertaking establishments and funeral homes are excluded. It is said that no power is given the city to define or establish residence districts. We see no merit in the contention. If the business or occupation is one that may be restricted to certain localities it would seem to follow that the body having the power to so restrict may define in its own way the territory to which the restriction applies, so long as it is not done in an unreasonable or arbitrary mode.

The most doubtful question is whether the facts stipulated show that this so-called funeral home, as carried on by defendant, interfered with the comfortable enjoyment of life or property in a district used exclusively for homes. It appears that a dead body was kept there for 24 hours. This brings it directly within the terms of the ordinance. The funeral home such as defendants are conducting, and as we understand such establishments are conducted elsewhere, does not fill the same office as a church. The funeral services in the latter are as a rule

confined to those who in life were members, and hence are necessarily not frequent. The dead body is in the church only for the brief period of the service. The funeral home, on the other hand, is open to any one who will pay the price. It is a business proposition; to make it successful the endeavor will be to have as many bodies brought there as possible; and to accommodate the business dead bodies may be kept there for hours or even days. We conclude that the stipulated facts are such that an ordinance which prohibits them in a residence district consisting exclusively of homes cannot be held unreasonable or void.

The judgment is affirmed.