JOHN B. MEAGHER AND OTHERS v. JOHN W. KESSLER AND
OTHERS.[1]

November 12, 1920.

No. 21,920.

**Nuisance — maintaining undertaking business in residential district.**

1. A city ordinance, prohibiting the maintenance of an undertaking
establishment and so-called funeral home in a residential part of a city,
*held* to be valid.

**Same — violation of ordinance.**

2. A funeral home located in a strictly residential district of a city,
prohibited by ordinance, *held* to be a nuisance.

**Same — remedy by injunction.**

3. Where an undertaker purchases and uses, as a funeral home, a
dwelling house situated in a strictly residential part of a city, and
thereby infringes upon the repose and comfort of those residing in the
neighborhood, depresses their spirits and depreciates the value of their
property, injunction is the proper remedy.

Action in the district court for Ramsey county to restrain defendants
from conducting a funeral home at 649 Summit avenue or in any man-
ner violating a specified ordinance of the city of St. Paul. The case
was tried before Haupt, J., who made findings and as conclusions of law
found that the funeral home in question constituted a nuisance; that the
ordinance was in full force and effect; that defendants and their agents
and servants should be restrained from carrying dead bodies to the
funeral home or receiving dead bodies therein, or from conducting fu-
nerals therefrom or therein, or from violating any of the provisions of the
ordinance. From an order denying their motion for judgment not-
withstanding the findings of fact and conclusions of law or for a new
trial, and refusing to amend the findings and conclusions, defendants
appealed. Affirmed.

*C. D. & R. D. O'Brien,* for appellants.

*John P. Kyle, Denegre, McDermott & Stearns* and *Sanborn, Graves &
Appel,* for respondents.

[1]Reported in 179 N. W. 732.

QUINN, J.

Action to enjoin defendants from conducting a funeral home at 649 Summit avenue, in the city of St. Paul. The cause was tried to the court, findings made and a permanent injunction ordered. Defendants moved for judgment notwithstanding the findings and conclusions of law, or for a new trial, upon the grounds: (1) That the findings of fact and conclusions of law are not justified by the evidence and are contrary to law; (2) errors of law on the trial and excepted to by defendants; (3) that Ordinance No. 5180, of the city of St. Paul, is void. From an order denying said motion defendants appealed.

It appears from the findings that Summit avenue is the principal residence street in the city of St. Paul. The homes of respondents, and appellants' property, No. 649, here in question, all face upon Summit avenue between Dale and St. Albans streets. All the houses in this vicinity are used as dwellings. The avenue, including marginal grass plots and walks, is 152 feet wide. The block here involved contains 15 lots on the north and 13 on the south side of the avenue, which are devoid of structures except as occupied by the parties hereto for residential purposes and by one apartment house. The part of Summit avenue traversing the residential section of the city is distinguished for its beauty and attractiveness and was especially laid out and designed as a street for homes. It is paralleled one block to the south by Grand avenue which has a number of minor business establishments to supply the wants of the people living in the vicinity and a trolley line. Selby avenue parallels Summit some four or five blocks to the north, has a trolley line and is partially occupied by business places of a minor character. Excepting these two avenues, the territory north and south of Summit is devoted almost exclusively to residential purposes and for many years has been held in high favor for those purposes.

The appellants, John W. Kessler and Thomas S. Maguire, for many years have been engaged in the undertaking business at No. 733 West Seventh street in the city of St. Paul. In August, 1919, they purchased the property at 649 Summit avenue here in question. The building thereon was erected long ago as a residence and was always so occupied. Shortly after acquiring the same, appellants encircled the building with a driveway, and about the same time began to advertise the place as a

funeral home. They caused a sign to that effect to be conspicuously displayed from the window facing Summit avenue, and rearranged the interior to meet the needs of a funeral home. It is appellants' purpose to take the bodies brought to them for interment, first to their undertaking place at 735 West Seventh street for the purpose of embalming, dressing and placing in caskets, and then to the funeral home at 649 Summit, there to remain in open caskets for 24 to 36 hours, during which time the relatives and friends would be at liberty to visit the place at all hours and to remain for services. Autos gather about and on conclusion of the services the cortége forms in the usual way to conduct the remains to the place of interment. The first-floor windows facing on Summit are 40 feet back and eight and one-half feet above the sidewalk. During the night, while a body is retained in the place, the interior and porch of the building are brilliantly lighted. The proofs show and the court found, that the maintenance of the funeral home would cause a material depreciation in the value of the surrounding property.

No. 649 Summit avenue is within the residential district of the city as defined by Ordinance No. 5180 of the city of St. Paul, section 1 of which provides:

"No undertaking or embalming business shall be carried on and no mortuary chapel, funeral home, vault, or other house, building, structure or receptacle for the preparation of the dead for burial or for the reception, deposit, or keeping, of the dead bodies of human beings shall be established, opened, kept or maintained in any residence district in the city of St. Paul."

Section 2 defines residence districts. Section 3 declares a business conducted contrary to the provisions of this ordinance a nuisance and section 4 fixes the penalty for a violation thereof. The validity of this ordinance was fully considered and upheld in the case of City of St. Paul v. Kessler, 146 Minn. 124, 178 N. W. 171, and a discussion of the same proposition here is unnecessary; we adhere to the former opinion.

Nuisances are said to be of three kinds, those which are nuisances per se, those which in their nature are not nuisances, but may become so by reason of their locality, surroundings or the manner in which they may be conducted, and those which in their nature may become nuisances, but

as to which there may be honest differences of opinion. 20 R. C. L. 383. Such may be classified as public, private and mixed nuisances.

The proofs and finding in the present case bring the premises in question and the business therein conducted by the appellants directly within the ordinance. The question presented, is whether this funeral home, conducted in the manner proposed, at the place in question, will be, in that vicinity and to the respondents, a nuisance such as the court ought to prevent and restrain. In other words, whether the business conducted by the appellants, is one liable to become a nuisance in a strictly residential district, if properly conducted, so that it should be abated. The trial court so found and we think justly. The proposition is not altogether new. While a funeral home may not take on or include some of the characteristics peculiar to an undertaking establishment, such as embalming, yet it does include some of the gruesome features, and may, for the purposes herein, be considered in the same class. It has been held, in a number of well considered cases, that undertaking and embalming establishments may be deemed nuisances, depending largely on the locality in which they are conducted. 20 R. C. L. 455; Densmore v. Evergreen Camp, 61 Wash. 230, 112 Pac. 255, 31 L.R.A.(N.S.) 608, Ann. Cas. 1912B, 1206; Saier v. Joy, 198 Mich. 295, 164 N. W. 507, L.R.A. 1918A, 825; Rowland v. Miller, 139 N. Y. 93, 34 N. E. 765, 22 L.R.A. 182; Goodrich v. Starrett, 108 Wash. 437, 184 Pac. 220; Stotler v. Rochelle, 83 Kan. 86, 109 Pac. 788, 29 L.R.A.(N.S.) 49; Osborn v. City of Shreveport, 143 La. 932, 79 South. 542, 3 A. L. R. 955; Beisel v. Crosby, 104 Neb. 643, 178 N. W. 272.

The general principles involved in these cases fully justify the conclusions arrived at by the learned trial court in the case at bar. The feelings and sentiments of the respondents are those of the ordinary, normal individual living under similar conditions, that is, being compelled, by day and night, to look out from their homes upon an institution devoted solely to the carrying in and out of dead bodies, and the conducting of obsequies. It is the almost universal rule that an undertaking business is not a nuisance per se, but, as generally held, the ordinary person can hardly live next door to such an establishment without becoming depressed and more or less deprived of the comforts and enjoyment of his sur-

roundings and when long continued it is liable to affect his general health.

We conclude that the rule must be considered as well settled, that when the prosecution of a business, of itself lawful, in a strictly residential district, impairs the enjoyment of homes in the neighborhood, and infringes upon the well being and comfort of the ordinary, normal individual residing therein, the carrying on of such business, in such locality, becomes a nuisance and may be enjoined. There is no fixed or arbitrary rule, however, governing cases of this kind. Each must be determined by the particular facts and circumstances therein.

Affirmed.