[Civ. No. 3890.   First Appellate District, Division Two.—December 6, 1921.]

## MARTHA DEAN et al., Respondents, v. POWELL UNDERTAKING COMPANY (a Corporation), Appellant.

[1] Nuisance—Maintenance of Funeral Parlors—Residential District—Injunction.—Maintenance of an undertaking establishment and funeral parlor in a city residential district cannot be enjoined on findings that such maintenance will greatly disturb residents in the neighborhood in the comfortable and quiet enjoyment and free use of their premises and that they will be annoyed and mentally and physically depressed thereby and their properties depreciated in value.

APPEAL from a judgment of the Superior Court of Fresno County. D. A. Cashin, Judge. Reversed.

The facts are stated in the opinion of the court.

Everts, Ewing & Wild and T. M. Stuart for Appellant.

Frank Kauke and G. L. Aynesworth for Respondents.

STURTEVANT, J.—This is an action to abate an anticipated nuisance. The plaintiffs had judgment in the trial court and the defendant has appealed under section 953a of the Code of Civil Procedure.

Plaintiffs and defendant own lands in the same general neighborhood in the city of Fresno. Plaintiffs and others use their lands for residential purposes, but there are, in the neighborhood, some business establishments. As the

---

1. Undertaking establishment as nuisance, notes, Ann. Cas. 1912B, 1208; 3 A. L. R. 965; 31 L. R. A. (N. S.) 608; L. R. A. 1918A, 829.

trial court found the district to be a residence district or neighborhood, we will consider the case in accordance with the finding' of the trial court. The plaintiffs' lands are on Coast Avenue, and 70 feet removed from the property owned by the defendant, which is also on Coast Avenue. In their complaint the plaintiffs alleged ''That defendant threatens and intends to and will, unless restrained by an order of this court, erect and construct on its said property and within 70 feet of the residence of plaintiffs Martha Dean and Nellie Dean, and within 120 feet of the residence of plaintiff Ruth E. Gall, an undertaking establishment and funeral parlor at which dead human bodies will be received and kept for burial and will be embalmed and prepared for burial and where autopsies will be held and funeral ceremonies and funeral rites will be performed and at which large numbers of people will constantly come and go and assemble for such purposes and for the purpose of seeing such dead bodies and attending such autopsies and funeral ceremonies. That if the said building is so constructed and used, plaintiffs and their respective families will be greatly and seriously disturbed in the comfortable, peaceable and quiet enjoyment of their homes and premises by reason of the constant knowledge and depressing influence of the presence and close proximity of said undertaking establishment, and of said dead bodies and' said funeral ceremonies, ·and the constant coming and going of persons visiting said funeral parlor for the purpose of seeing the dead and of attending funeral ceremonies thereat and being present at autopsies, and of the funeral processions and gathering of vehicles for the same. That by reason thereof, plaintiffs and their families would be so greatly disturbed and depressed in mind and in spirits as to destroy their comfort and peace of mind and to seriously affect plaintiffs' health and the health of their respective families, and to destroy the value of their said property as a residence and make it impossible for them to continue to occupy the same, all of which damage will be suffered by plaintiffs, in addition to the damage suffered by other residents of the neighborhood, and the public in general. That the value of the property of plaintiffs · and other property in the neighborhood will be greatly impaired and depreciated.''

The briefs of counsel proceed as though the first part of paragraph 6 of the findings were worded as follows: "That if defendant's said premises be used for (1) embalming, storing and keeping for burial the dead bodies of human beings, as a place for the holding of autopsies and inquests, and as a morgue, such use will greatly and seriously disturb plaintiffs and the families of each of them in the comfortable, peaceable and quiet enjoyment and free use of their premises herein described and said plaintiffs and each of them and their families will be annoyed and mentally and physically depressed and injured thereby. That the health and peace of mind of said plaintiffs and each of them and their families will, by reason of said use, be affected and injured and the value of their said premises for residence purposes will be depreciated and the comfortable enjoyment thereof interfered with. That all of said injuries to plaintiffs and their said premises will cause damage to them in addition to the injury and damage suffered by other residents of the neighborhood and the public in general." Except as herein stated, there was no pleading, no evidence, and no finding of any injury or anticipated injury to the plaintiffs by any intended use, or manner of use, to which the defendant may hereafter put its property.

[1] Counsel on both sides have copiously, industriously, and with great learning briefed and argued the case. The appellant contends that it should not have been enjoined from conducting upon its own property a business in all respects lawful and in all respects operated with the highest degree of care and under the latest approved methods, solely and entirely because a few people living in the neighborhood believe that such business so conducted will hereafter cause them mental depression. In reply to this contention the respondents have stated they are entitled to the relief awarded and that their position is supported by authorities. They cite cases that arose in those jurisdictions where a statute or ordinance had been passed limiting the locations in which an undertaking establishment might be located. (*City of St. Paul* v. *Kessler*, 146 Minn. 124 [178 N. W. 171]; *Meagher* v. *Kessler*, 147 Minn. 182 [179 N. W. 732]; *Brown* v. *City of Los Angeles*, 183 Cal. 783 [192 Pac. 716].) As Fresno has not adopted an ordinance on that subject the cases are not helpful. The respondents

cite other cases which involved an issue, and a finding by
the trial court, to the effect that from the building in
question there escaped, or would escape, *foul and noxious
odors,* or, as in some instances, that by reason of the opera-
tion of the particular building there was *great danger to
health from infectious and communicable diseases* from the
bodies of persons taken to the premises in question. (*Row-
land* v. *Miller,* 139 N. Y. 93 [22 L. R. A. 182, 34 N. E.
765]; *Densmore* v. *Evergreen Camp,* 61 Wash. 230 [Ann.
Cas. 1912B, 1206, 31 L. R. A. (N. S.) 608, 112 Pac. 255];
*Barnes* v. *Hathorn,* 54 Me. 124; *Saier* v. *Joy,* 198 Mich. 295
[L. R. A. 1918A, 825, 164 N. W. 507]; *Goodrich* v. *Starrett,*
108 Wash. 437 [184 Pac. 220]; *Osborn* v. *Shreveport,* 143
La. 932 [3 A. L. R. 955, 79 South. 542]; *Everett* v. *Pas-
chall,* 61 Wash. 47 [Ann. Cas. 1912B, 1128, 31 L. R. A.
(N. S.) 827, 111 Pac. 879]; *Stotler* v. *Rochelle,* 83 Kan. 86
[29 L. R. A. (N. S.) 49, 109 Pac. 788].) The doctrine
announced in those cases is statutory in this state. (Sec.
3479, Civ. Code.) But the plaintiffs have not made any
showing to the effect that the defendant's building will be so
constructed and operated that there will escape from the
building any noxious odors or that any disease will be al-
lowed to spread therefrom. That we have not misunder-
stood the doctrine stated in *Everett* v. *Paschall, supra,*
and *Stotler* v. *Rochelle, supra,* is made clear by an exam-
ination of *Rea* v. *Tacoma Mausoleum Assn.,* 103 Wash. 429
[1 A. L. R. 541, 174 Pac. 961]. In that case the supreme
court of Washington was called upon to interpret both
of those cases and (174 Pac. 962) it used this language:
"No decision has been called to our attention wherein any
court has awarded injunctive relief, rested upon the sole
ground of the mere presence of a cemetery or other place of
sepulture, unattended by injurious or offensive drainage or
fumes, sensible to the complaining party, and our own
search leads us to believe that no such decisions have been
rendered." *Beisel* v. *Crosby,* 104 Neb. 643 [178 N. W. 272],
is the one case which the respondents cite that comes most
nearly sustaining their contentions. In that case the su-
preme court of Nebraska was considering a set of facts that
was altogether peculiar. The properties involved were
located on a tract known as Kountze Place. Commencing
on (page 645 of 104 Neb. (page 272 of 178 N. W.) the court

says: "Originally Kountze Place was a quarter-section of land platted as an addition to Omaha. The deeds for the lots limited the grant to residential purposes for 25 years. With this common purpose Kountze Place became an exclusive, compact, residential district, where there are paved streets, ornamental grounds, well-kept lawns, private driveways, and beautiful homes. In the pursuit of health, recreation and happiness, families resorted to open porches and children played on lawns. In the midst of these homes and grounds defendant bought a large, handsome residence, after the limitation restricting the use of the lot to residential purposes had expired. Over the protest of plaintiffs, defendant occupies and uses this residence for an undertaking establishment. In front of it he erected a sign, 4 feet high and 9 feet long, advertising the premises before their eyes as 'Crosby's Funeral Home.' In addition, he has constructed and intends to maintain an electric sign. There is an operating and embalming room in the basement, where the dead are prepared for burial. To and from the premises an automobile hearse, with unavoidable noises, is driven night and day. Mourners and friends of the dead visit the place. The building is used as a chapel, where sermons are delivered and dirges are sung. Funerals are weekly occurrences, and there were as many as two services in one day. The congestion in the street more than once prevented neighbors from stopping automobiles in front of their own doors. Boxes, used to protect caskets, are piled on the grounds of the funeral home, in view of the public. The dead are carried to and from the hearse a few feet from the windows in the home of one of the plaintiffs. Flowers intended for the funeral home have sometimes been delivered by mistake at private residences. Complete freedom and full enjoyment of home life in the neighborhood have been lost. Lawns, porches, and front rooms have in some instances been partially abandoned, and property in the vicinity has decreased in value. There is a natural shrinking from the scenes and the sounds at the funeral home. Respect for the presence of the dead and for the mourners at funerals grows out of gentle manners and good impulses and influences human conduct. Recurring changes from happy demeanor in private homes to solemnity in the presence of death affect the spirits of rightly

constituted individuals, both old and young. The business which defendant conducts among the homes of plaintiffs will tend to depress them mentally, to lower their vitality, and to weaken their power to resist disease. With full knowledge of their protest, the conditions of which they complain were forced upon them by defendant. In exercise of their right to life, liberty, and the pursuit of happiness they had united as a community in a lawful purpose to confine their district to residential purposes. On these facts and conclusions are plaintiffs entitled to equitable relief?" It is sufficient to state that the facts involved in the foregoing case are so different from the facts in this case that we do not consider that case as controlling.

In plaintiffs' complaint they inserted something regarding the blocking of the streets, etc., but that the blocking was expected to occur by reason of the holding of funerals. But the trial court did not enjoin the holding of funerals and this appeal is not concerned with the subject of the blocking of streets.

The appellant cites *Westcott* v. *Middleton,* 43 N. J. Eq. 478 [11 Atl. 490]. The showing made by the plaintiffs in that case is more nearly parallel to the showing made by the plaintiffs in this case. In stating its views the court of chancery of New Jersey quoted from an English case and, at page 486 of 43 N. J. Eq. [11 Atl. 494], said: "In this case, then, we have the broad, yet perfectly perceptible or tangible ground or principle announced, that the injury must be *physical,* as distinguished from one purely *imaginative;* it must be something that produces real discomfort or annoyance through the medium of the senses, not from delicacy of taste or a refined fancy. This is very comprehensive; indeed, I cannot conceive of a more liberal or broad statement of the law; yet I apprehend it is a true delineation of the law." And then, at page 488 of 43 N. J. Eq. [11 Atl. 495], the court said: "The results of my inquiries are, that while the defendant has no right to conduct his business so as to endanger or threaten the health of the complainant or to make his home uncomfortable, either by filling the air with noxious vapors, or of the germs or seeds of disease, the evidence does not show that he has done either, and that the business of an undertaker is not a

nuisance *per se.''* That statement squares with our views as to the rights of the parties in this case.

No case has been cited to us in which the supreme court of California has considered the exact question involved in this case. However, the doctrine announced by the court of chancery of New Jersey has been announced and followed in California. The rule was followed and applied in *Varney & Green* v. *Williams,* 155 Cal. 318, 320 [132 Am. St. Rep. 88, 21 L. R. A. (N. S.) 741, 100 Pac. 867], to the maintenance of billboards; in *Judson* v. *Los Angeles Suburban Gas Co.,* 157 Cal. 168, 172 [21 Ann. Cas. 1247, 26 L. R. A. (N. S.) 183, 106 Pac. 581], to the operating of a gasworks; and in *People* v. *Selby Smelting & Lead Co.,* 163 Cal. 84, 92 [Ann. Cas. 1913E, 1267, 124 Pac. 692, 1135], to the operation of a smelting plant.

If the particular acts, enjoined in this case, under the facts found, can be legally enjoined, then it would seem to follow that for the very same reasons nearly every hospital in the land could be enjoined. We cannot believe such is the law.

The trial court found that the value of the plaintiffs' property for residential purposes will be depreciated. Such findings, standing alone, and not supported by other findings showing that the defendant is maintaining, or is about to maintain, a nuisance, will not support the judgment. In many instances, in populous neighborhoods, the property of one person is depreciated by the near proximity of the property of another. Such burdens are ordinary incidents to residence and ownership in a city. (*McCloskey* v. *Kreling,* 76 Cal. 511, 512 [18 Pac: 433]; *Siskiyou Lumber etc. Co.* v. *Rostel,* 121 Cal. 511, 513 [53 Pac. 1118].) Other points are discussed in the briefs, but, in view of what has been said above, it is not necessary to discuss any other points.

The judgment is reversed.

Langdon, P. J., and Nourse, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 2, 1922.

All the Justices concurred.