## L. D. Pearson & Son, et al. v. Bonnie, et al.

(Decided February 27, 1925.)

### Appeal from Jefferson Circuit Court
### (Chancery Branch, Second Division).

1. Nuisance—Lawful Business, if Conducted in Inappropriate Manner or Place, May be Enjoined if Injury is Substantial.—Even a lawful business, if conducted in an inappropriate manner or in an inappropriate place, may be enjoined as nuisance, but injury must be of substantial character and such as impairs ordinary physical enjoyment of property within its sphere, and if injury be merely sentimental, though accompanied by depreciation in market value of property, there is no nuisance in legal sense.

2. Nuisance—Undertaking Establishment in Residence District Not Enjoined, Though Depreciating Value of Property and Causing Mental Annoyance.—Equity will not enjoin conducting of undertaking establishment in residence district because of mental annoyance or depression caused thereby to other property owners, and depreciation of value of their property, where risk of contract is nil, and risk or odors from disinfectants is small.

WOODWARD, WARFIELD & DAWSON and W. V. GREGORY for appellants

E. J. McDERMOTT for appellees.

OPINION OF THE COURT BY COMMISSIONER DRURY—
Reversing.

This is an appeal from the judgment of the Jefferson circuit court enjoining appellants herein from conducting an undertaking establishment at Third and Ormsby streets in the city of Louisville. The chancellor who tried this case has admirably summarized the essen-

tial facts from the thousand pages and more of testimony taken in the case. We here insert that summary:

"Defendant, L. D. Pearson and Son, now conducts and for many years has conducted an undertaking business at Third and Chestnut streets in the city of Louisville. The Pearsons, father and sons, in succession, have been undertakers in Louisville since the year 1848. They have always enjoyed an excellent reputation for integrity and competency in their calling. . In January of this year (1924) defendant, Pearson Realty Company, contracted to purchase the residence of the late Edward H. Ferguson, and in May of this year, received a conveyance of that property. It is in this building that L. D. Pearson and Son propose to conduct their business in the future.

"Their place of business will include a garage for their hearses and cars, an embalming room, a room where caskets are exposed for sale, as well as suitable mourning attire for both sexes, a 'chapel' or commodious room in which funeral services may be conducted, an office and perhaps other rooms. The upper floors of the building are to be used by the Pearson family (twelve in number) as a place of residence. In case of a funeral from this establishment, it is proposed that the hearse and other hired cars shall come in through an alley in the rear, shall drive up to a side entrance, beneath porch-cochere, where the coffin will be removed from the building and put into the hearse and where mourners will enter the following cars, and all shall then proceed past the front of the building to Third street where such private cars as may be in use shall join the cortege, before proceeding to the cemetery.

"Plaintiffs are residents of the immediate neighborhood. Plaintiffs, Kate S. Avery and F. A. Reese, own and occupy dwellings immediately adjoining the property just acquired by the Pearsons, on the one side and the other, which dwellings have many windows overlooking the Pearson property, the walls of which are fourteen or sixteen feet distant. These dwellings are situated in one of the choicest residential districts of Louisville, of which the Ferguson residence (now the property of defendant) has been, perhaps, the chief ornament. Plaintiffs promptly resented the intrusion of the

Pearson business. Having failed to dissuade the Pearsons from proceeding with their plan, these plaintiffs (thirty-one in number, to whom others have since been added) on March 5, 1924, before conveyance of the Ferguson residence had been made to defendants, filed their petition for an injunction against the use of this property in the manner proposed, upon the ground that it would endanger their health, would be offensive to sight and smell and hearing and the finer sensibilities, would depress the value of their property and would constitute a nuisance.

"I think the evidence fully supports plaintiffs' claim that their neighborhood is a 'residential district' and entitled to such protection as that character may, in proper case, authorize. Sporadic, neighborhood groceries or drugstores cannot deprive it of that character, nor can the two or three other and slight approaches of commerce, shown by the record.

"The evidence does not, I think, support the claim that proximity of a well-conducted undertaking establishment will increase the hazard of contagion. Practically all of the evidence is the other way. It does, however, show that many persons would suffer from that apprehension, however erroneous.

"The evidence does not fully satisfy my mind that there is no risk that odors from disinfectants used in embalming will reach the neighboring houses. I think it does show, however, that that risk is not very great.

"Nor do I think it clear that the tranquility of those dwelling in the next houses will not be disturbed now and then by sounds incidental to funeral services. But I think it must be admitted, with reference both to the sounds and smells complained of here, that it is only by an association of ideas that they can be said to be seriously offensive. Of course a bad odor may be over-offensive and I suppose that actual, physical illness might result from the shock to the olfactory organs from the nauseating odors of a rendering plant, for example. But an occasional whiff of a disinfectant would hardly excite comment, if it were not a reminder of what was taking place next door. And the sounds which

can reasonably be expected to come from a funeral exercise would hardly be noticed in this noisy world, were it not for the depressing ideas associated with those sounds.

"That the presence of this establishment would depress the value of neighboring property admits of no doubt at all. Even defendants' witnesses (or some of them) admit their strong disinclination to live next or near to such an establishment. It is true that the members of the families of undertakers seem not to share this feeling. It is their custom, apparently, to dwell in the upper stories of buildings devoted to the family business. And defendants have introduced several other witnesses, and among them several women, who dwell near the present establishment of defendants, at Third and Chestnut streets, and who find no inconvenience, whether of body or of mind, from the association. Indeed, one of them expressed a strong partiality for such a neighbor and had even requested that some of the windows be left open in order that she might better hear the singing of funeral hymns.

"But this is a stoic or philosophic mood not genial to the average person, and I think there is no manner of doubt that the sale and rental of property in this neighborhood will be materially deminished, if this business is conducted as proposed.

"I think it is equally clear that the proximity of such an establishment will have a depressing effect upon the spirit of the average person. Epictetus or Marcus Aurelius would doubtless have conquered such a weakness, but such stoic self-control cannot be expected from ordinary persons. The consolations held out by St. Paul in his First Epistle to the Corinthians, though repeated at every grave, have not reconciled man to the idea of death. He has an unconquerable repugnance to it, and to everything connected with it. Doubtless there are persons whose susceptibility to this influence is either dull by nature or has been made so by constant familiarity with the gruesome aspects of mortality. But the average person is not so constituted or so inured. It is not a sentiment of sadness, such as is connected with the death of one dear to him. In those circumstances, this feeling of repugnance seems to grow less. It is an instinctive drawing back, a horrified

shrinking, physical and spiritual, from a thing which his nature abhors.

"The testimony of medical men in this case as to the effect of the constant excitement of this sentiment upon physical health is somewhat conflicting. I think the preponderance of evidence is to the effect that certain injurious physical consequence do follow upon such mental depression."

From this summary of the facts it is apparent that the main complaint of the appellees herein is based on the mental annoyance or depression they will incur by reason of the proximity of the appellant's undertaking establishment. The risk of contagion is nil. The risk of odors of disinfectants is exceedingly small, and the sounds which may reasonably be expected to come from these funeral exercises are not, aside from their mental associations, of a kind to cause discomfort to those who may hear them. Under such circumstances, will equity grant an injunction?

It must be admitted that the business of an undertaker is a lawful and necessary business. It must be further admitted that even a lawful business if conducted in an inappropriate manner may be enjoined. But there is an entire absence of testimony here that the appellants have in the past or are even threatening in the future to conduct their business in an inappropriate manner. It is also true that a lawful business may be enjoined as a nuisance when located in an inappropriate place, as for instance a rendering plant in a thickly populated and residential neighborhood. But in such state of case, the injury or annoyance which warrants relief is of a real and substantial character and such as impairs the ordinary enjoyment, physically, of the property within its sphere. If the injury complained of, however, be merely a sentimental one, though it be accompanied by a depreciation in the market value of the property occupied, there is no nuisance in the legal sense. Thus, in the case of Boyd v. Board of Council of the City of Frankfort, 117 Ky. 199, 77 S. W. 669, 25 R. 1311, 111 Am. St. Rep. 240, the effort to prohibit the establishment of a negro church in a white residential neighborhood met with failure. In Albany Christian Church v. Wilborn, 112 Ky. 507, 66 S. W. 285, 25 R. 1820, this court refused to enjoin the location of a livery stable in close proximity to a church. Again in the case of Emrich v. Marcucili, 196 Ky. 495, 244 S. W. 865, this court pointed out

that the conduct of a lawful business will not be enjoined unless its conduct is such as to *materially* interfere with the adjacent owner's enjoyment of his property, but such interference must be substantial as contra-distinguished from a mere fanciful one. We further said that the question in all cases is whether the annoyance produced is such as to *materially* interfere with the ordinary comfort of home existence. Applying these rules we held that the operation of a hospital would not be enjoined although its consequential effects might be to reduce the value of the adjacent property, but in so far as the operation of a hospital caused loud noises and odors to come out therefrom and to invade the adjacent owner's premises the same would be enjoined. From these cases, it is apparent that the location of a lawful business is not rendered inappropriate simply because the value of adjacent property is thereby depreciated, and the sentiments and feelings of the owners are touched. One living in a city must necessarily submit to the annoyances which are incidental to city life and to risk the march of trade and business progress. Without trade, the largest city would soon languish and become a mere shell. Without residents, it would be like the snow on the bosom of the desert. It is a difficult matter at all times to strike the true medium between the conflicting interests and tastes of people in a densely populated municipality. But at least until the state steps in and acting for its people as a whole undertakes under its police power to zone a city, the inhabitants thereof must risk the rise and fall in value of their property occasioned not by a material invasion of its physical enjoyment but only by the establishment of a business or building though accompanied by a sentimental repugnance to the same. It is, as so many questions in the law are, a matter of the balancing of conveniences and a just regard to the needs of trade and the rights of citizens require that the balance be struck at least here.

An examination of the authorities bearing on the particular question of the location of an undertaking establishment in a residential neighborhood confirms us in the belief that we have struck the right balance by the position we have taken. It is true that a great deal of language will be found in these opinions indicating a tendency to extend the rule we rely upon to cover a sentimental annoyance, but it is plain that the very courts which use such language have not been entirely satisfied

with the results to which it logically points, and they have been at great pains to rest their decisions on a more substantial basis. Thus in Rowland v. Miller, 139 N. Y. 93, 34 N. E. 765, 22 L. R. A. 182 which was an undertaker case in a residential neighborhood, the court was very careful to rest its decision on a restricted clause in a deed against the conduct of any business injurious or offensive to the neighboring inhabitants, and it expressly disclaimed any intention to hold that the business could have been abated as a legal nuisance in the absence of such restricted covenant. The court said: "This case is not governed by the general law as to nuisances but by the force and effect of the covenants contained in the agreement."

In the case of Goodrich v. Starrett, 108 Wash. 437, 184 Pac. 220, we find a case of injunction against the maintenance of an undertaking establishment which had already been in operation, and which in the course of such operation had shown itself to be a nuisance on account of the manner in which it was operated. It was shown that swarms of flies came in and out of the place, which was unscreened, that it received bodies of those dying from contagious and infectious diseases, that there were no sewer connections with the building, and that it was indeed and in fact a physical menace to the neighborhood. Of course, the operation of such a place was a nuisance. Beyond this, however, we find that the Washington Code defines a nuisance as anything which "essentially interferes with the comfortable enjoyment of life and property." (1915 Rem. Code, section 943.)

The case of Densmore v. Evergreen Camp, 6 Wash. 230, 112 Pac. 255, 31 L. R. A. (N. S.) 608, Ann. Cas. 1912B 1206, is another Washington case where the court found the facts to be that there was danger of infection and contagion and of flies such as appeared in the Goodrich case, *supra,* and of course the court enjoined the maintenance of such an undertaking establishment. It is true the court in this Densmore case laid some emphasis on the tendency of undertaking establishments in residential neighborhoods to depress the minds of normal persons and probably the court rightly did this under the Washington Code, *supra;* but in the case of Rea v. Tacoma Mausoleum Association, 103 Wash. 429, 174 Pac. 961, 1 A. L. R. 541, the court distinctly held that it would not issue an injunction against a business caus-

ing a decline in adjacent property values accompanied by mere sentimental objections without more.

The case of Osborne v. City of Shreveport, 143 La. 932, 79 So. 542, 3 A. L. R. 955, turned on the validity of a city ordinance, in effect a zoning ordinance, prohibiting the location of an undertaking establishment in a residential part of the city. The court rested its decision in that case on the right of a city to so zone itself. The same is true of the cases of Meagher v. Kessler, 147 Minn. 182, 179 N. W. 732; City of St. Paul v. Kessler, 146 Minn. 124, 178 N. W. 171, and Brown v. City of Los Angeles, 183 Cal. 782, 192 Pac. 716 (Cal.). With reference to this last named case, we may refer to the case of Dean v. Powell Undertaking Co., 55 Cal. App. 545, 203 Pac. 1015 (Cal.), where the Supreme Court of California distinctly held that undertaking parlors from which escape no foul or noxious odors, or which do not endanger health from infectious and communicable diseases can not be enjoined simply because they will greatly disturb the adjoining property owners in that they will be annoyed mentally and be physically depressed and thereby be injured in health even though their property be depreciated in value by reason thereof.

The case of Saier v. Joy, 198 Mich. 295, 164 N. W. 507, L. R. A. 1918A 825, discloses that the court found that the probability of noxious odors would be very great and also that a morgue would be maintained where unidentified dead would be exposed for identification. In Cunningham v. Miller, 178 Wis. 22, 189 N. W. 551, 23 A. L. R. 739, the proof plainly demonstrated that due to the way the undertaking establishment was being conducted it was a nuisance. The same is true of Beisel v. Crosby, 104 Neb. 643, 178 N. W. 272.

The resume of these cases indicate clearly that the courts were not satisfied, although they used in their opinions some language looking that way, to rest an injunction against an undertaking parlor solely on the grounds of depreciation in property value accompanied by mental depression due to the association of ideas, and that they all insisted on some other element being present in the case, such as a zoning ordinance or the imminent probability of odors, noise and communicable diseases coming from the property. In the case at bar there is an entire absence of these elements on which these other courts found necessary to base their opinions.

*Per contra* to the cases above cited, we find those of Wescott v. Middleton, 43 N. J. Equity, 478, 11 A. 490; Koebler v. Pennewell, 75 Ohio State 278, 179 N. E. 471, Dean v. Powell Undertaking Co., *supra,* and the analogous cases of the maintenance of cemeteries of Ellison v. Washington, 58 N. C. 57, 75 Am. Dec. 430; Monk v. Packard, 71 Me. 309, 36 Am. Rep. 315. These cases follow the rule which we have shown to be the one prevailing in this state and we are convinced that it is the sound one.

Therefore, as there is no evidence that the appellants have or will conduct their business in such a manner as to cause a substantial and material interference with the adjacent owners' enjoyment of their property and the only complaint the latter really have is the depreciation of the value of their property occasioned or accompanied by a sentimental repugnance to the business of appellants, the lower court erred in granting the injunction it did.

Wherefore, the judgment is reversed with directions to dismiss the petition.