[Civ. No. 3738.   Fourth Dist.   Oct. 28, 1948.]

GUY W. BROWN, Respondent, v. N. B. ARBUCKLE,
Appellant.

Siemon, Maas & Siemon for Appellant.

S. B. Gill for Respondent.

MUSSELL, J.—This is an appeal by the defendant from a judgment enjoining and restraining him from establishing and maintaining a mortuary and funeral parlor on property

owned by him in the town of Oildale, California. In the amended complaint for an injunction it is alleged that defendant is the owner of Lots 1 and 2 in Block 4 of Oildale Annex and plaintiff owns Lots 3 and 4 adjoining; that on or about December 19, 1947, defendant commenced the construction and erection of a mortuary and funeral parlor upon his premises; that plaintiff's property, upon which he resides with his family, is situated in the residential portion of Oildale and is suitable and valuable only for residential purposes; that in the operation of the mortuary and funeral parlor human bodies will be received, embalmed and kept for burial; that autopsies will be held and funeral ceremonies conducted; that large numbers of people will come and go and assemble for such purposes; that ambulances will call at said funeral parlor at all times of the day and night to deliver dead human bodies; that the operation of the mortuary and funeral parlor immediately adjacent to plaintiff's property, with its constant reminder of mortality and attendant circumstances, will create a depressive atmosphere which will affect the mental attitude of plaintiff and the members of his family with consequent physical disorders; that the quiet use and enjoyment of plaintiff's residential property will thereby be impaired; that the true value of plaintiff's property as a home, as a place of repose and comfort will thereby be greatly diminished and that the normal operation of the mortuary and funeral parlor will interfere with and obstruct the normal and free passage of traffic along the streets in the vicinity and adjacent to plaintiff's property. It is also alleged that the owners of certain lots in the Oildale Annex, including the lots of plaintiff and defendant, entered into an agreement in writing which contains covenants restricting the use of said lots to private residences or dwelling houses and forbidding the use of these lots for the erection of any business buildings; that this agreement was recorded in the office of the recorder of Kern County in December, 1939; that defendant purchased his property with knowledge of the terms of this agreement and has commenced the construction of a mortuary and funeral parlor thereon in violation of the terms of the agreement to plaintiff's damage.

It was stipulated at the trial that defendant's funeral parlor would not be a nuisance *per se,* and that there are no zoning or other restrictive ordinances affecting the property.

Plaintiff Brown testified that the repeated sight of visitors to the funeral parlor, showing signs and evidences of bereave-

ment, would be a source of mental irritation. He testified, as did his wife, that they used their backyard constantly in the summer as a place to eat, have picnics, lunches and parties for their friends; that the proximity of the funeral parlor, with its constant reminder of death, would have a dampening effect on this type of entertainment, and would in all probability cause their friends to refrain from visiting them. Defendant testified that the main entrance for visitors to the mortuary would be on Wilson Street immediately adjacent to plaintiff's property and in view of his family and neighbors from their homes in the 400 block on that street; that he intended to have a large neon advertising sign over the entrance to the mortuary on Wilson Street. There was testimony by a physician that the establishment of a mortuary next to plaintiff's home could and would reasonably cause mental strain on the respondent and his family and neighbors, so as to reasonably result in direct physical or functional upsets and disturbances. There was testimony that the sale and rental value of plaintiff's real property would be reduced between 10 and 12 per cent by the establishment of the mortuary. There are no business establishments in the block in which defendant's property is located and within a radius of several blocks the character of the neighborhood is primarily and largely residential.

The court found that the establishment of a mortuary and funeral parlor upon defendant's premises would be a constant mental irritant to plaintiff and members of his family which would reasonably cause the plaintiff and his family to suffer certain physical disturbances, would interfere greatly with the plaintiff and his family's comfort and enjoyment of his property and would reduce the sale and rental value thereof; that the immediate neighborhood within a radius of more than one block of defendant's property is used exclusively for residential purposes, and for a radius of several blocks is primarily and substantially residential. The court concluded that the restrictions in the agreement between the lot owners were not binding upon the defendant and that the establishment and maintenance of a mortuary and funeral parlor upon defendant's property would create a nuisance in fact in an exclusively residential area and that defendant should be enjoined from establishing it.

The question to be determined is whether the establishment and operation of a mortuary or funeral parlor in a residential

area as here shown can constitute a nuisance enjoinable in equity.

■ While some courts hold that an undertaking parlor or funeral home in a residential district is not a nuisance, the more recent trend of authority is clearly to the contrary. *Bevington* v. *Otte,* 223 Iowa 509 [273 N.W. 98]. Supreme Court of Iowa, 1937.)

In an annotation in 87 American Law Reports, page 1061, it is said:

''The greater weight of recent authority is to the effect that the establishment and operation of an undertaking business in a purely residential section, under circumstances which would cause a depressed feeling to the families in the immediate neighborhood, and a constant reminder of death, appreciably impairing their happiness, or weakening their power to resist disease, and depreciating the value of their property, constitutes a nuisance.''

This statement is supported by the citation of authorities from Alabama, Arkansas, Indiana, Kansas, Maryland, Michigan, Missouri, New York, North Dakota, Oklahoma, Texas, Virginia and Washington. (*Bevington* v. *Otte, supra.*) In this case the court quotes the language in *Tureman* v. *Ketterlin,* 304 Mo. 221 [263 S.W. 202, 204, 43 A.L.R. 1155], as follows:

''An undertaking establishment is not a nuisance per se. The business of preparing dead bodies for burial is not only lawful but indispensable. It may become a nuisance, however, from the manner in which it is conducted or because of the place at which it is maintained, and it is very generally held to be such when it intrudes itself into a strictly residential district. *Beisel* v. *Crosby,* 104 Neb. 643, 178 N.W. 272; *Densmore* v. *Evergreen Camp,* 61 Wash. 230, 112 P. 255, 31 L.R.A. N.S. 608, Ann.Cas. 1912B, 1206; *Saier* v. *Joy,* 198 Mich. 295, 164 N.W. 507, L.R.A. 1918A, 825; *Meagher* v. *Kessler,* 147 Minn. 182, 179 N.W. 732; *Osborn* v. *Shreveport,* 142 La. 932, 79 So. 542, 3 A.L.R. 955; *Goodrich* v. *Starrett,* 108 Wash. 437, 184 P. 220; *Cunningham* v. *Miller,* 178 Wis. 22, 189 N.W. 531, 23 A.L.R. 739. The essential ground of such holding is that the maintenance of an undertaking establishment in a residence district tends to destroy the comfort, well-being, and the property rights of the owners of homes therein.''

In Cooley on Torts (4th ed. 1932), Volume 3, page 180, section 435, it is said:

"The inherent nature of an undertaking establishment is such that, if located in a residential district, it will inevitably create an atmosphere detrimental to the use and enjoyment of residence property, produce material annoyance and inconvenience to the occupants of adjacent dwellings, and render them physically uncomfortable, and in the absence of a strong showing of public necessity, its location in such a district should not be permitted over the protest of those who would be materially injured thereby."

In *Arthur* v. *Virkler* (1932), 144 Misc. 483 [258 N.Y.S. 886], the court after reviewing many cases held that the moving of an undertaking establishment into the midst of a residential district was an illegal encroachment upon plaintiffs' property rights and a nuisance which equity will abate.

The Supreme Court of Georgia (1938) in *McGowan* v. *May*, 186 Ga. 79 [196 S.E. 705], is in accord with the statement in 87 A.L.R. 1061.

Where, in an area of eight city blocks, there were about 75 residences and the only commercial places were two small grocery stores and a delicatessen shop the court held that the area was essentially residential in character so as to entitle the owner and occupant of a residence therein to an injunction against the establishment of a funeral home on an adjoining lot. (*Davis* v. *Holmes* (1940), 189 Miss. 554 [198 So. 25].)

In *Smith* v. *Fairchild* (1942), 193 Miss. 536 [10 So.2d 172], the Supreme Court of Mississippi affirmed the modern weight of authority rule and held that the maintenance of an undertaking and embalming establishment in a residential district must inevitably operate to decrease substantially property values, destroy the comfort and happiness of people residing in the immediate vicinity, and is an unwarrantable invasion of the rights of others, and constitutes a nuisance.

The Supreme Court of Missouri (*Clutter* v. *Blankenship* (1940), 346 Mo. 961 [144 S.W.2d 119]), in holding that the establishment of a funeral home in a purely residential district constituted a nuisance referred to the California case of *Dean* v. *Powell Undertaking Co.*, 55 Cal.App. 545 [203 P. 1015], as supporting a contrary contention but held that a majority of adjudications by other courts are in accord with the Missouri cases, and that the trend of later decisions point in that direction, citing *White* v. *Luquire Funeral Home*, 221 Ala. 440 [129 So. 84]; *Fentress* v. *Sicard*, 181 Ark. 173 [25 S.W.2d 18]; *Harris* v. *Sutton*, 168 Ga. 565 [148 S.E. 403];

*Haan* v. *Heath*, 161 Wash. 128 [296 P. 816], in effect overruling *Rea* v. *Tacoma Mausoleum Assn.*, 103 Wash. 429 [174 P. 961, 1 A.L.R. 541]; *Beisel* v. *Crosby, supra; Albright* v. *Crim*, 97 Ind.App. 388 [185 N.E. 304]; *Weinmann* v. *Miles*, 134 Kan. 107 [4 P.2d 437]; *Dillon* v. *Moran*, 237 Mich. 130 [211 N.W. 67]; *Arthur* v. *Virkler, supra; King* v. *Guerra* (Tex.Civ. App.), 1 S.W.2d 373; *Bragg* v. *Ives*, 149 Va. 482 [140 S.E. 656]. Other cases to the same effect are *Kundinger* v. *Bagnasco* (1941), 298 Mich. 15 [298 N.W. 386]; *Fraser* v. *Fred Parker Funeral Home* (1942), 201 S.C. 88 [21 S.E.2d 577]; *Reiser* v. *Osborn* (1944), 114 Ind.App. 617 [53 N.E.2d 545]; *Meldahl* v. *Holberg* (1927), 55 N.D. 523 [214 N.W. 802], and *Fink* v. *Smith* (1934), 140 Kan. 345 [36 P.2d 976].

In the instant case there was an agreement between lot owners in the vicinity of and including defendant's property, which was recorded prior to the defendant's purchase of it, and the agreement contained restrictive building covenants of which defendant had notice. This agreement was evidence of the character of the neighborhood and the evident desire of property owners therein to maintain their properties for residence purposes only.

The trial court found that the establishment of a mortuary and funeral parlor on defendant's property would greatly reduce the sale and rental value of plaintiff's property; that such an establishment would interfere greatly with the comfortable enjoyment of his property and would be a constant mental irritant to the plaintiff and members of his family and would cause them to suffer physical disturbances.

We are in accord with these findings. A mortuary and funeral parlor as a constant reminder of death has a depressing effect upon most people. Funerals, hearses, coffins, the keeping of dead bodies on the premises, the coming and going of bereaved persons, are conducive to depression and sorrow and deprive a home of the comfort and repose to which its owners are entitled. Especially is this true when such an establishment is located adjacent to and in full view of plaintiff's property. Medical testimony was received to the effect that the mental strain caused thereby would reasonably result in direct physical disturbances.

Our attention has been directed to the case of *Dean* v. *Powell Undertaking Co.*, 55 Cal.App. 545 [203 P. 1015], as contrary to the rule announced in the cases herein cited. In the Dean case the decision was based solely upon the pleadings and general findings. The court correctly found that a nui-

sance *per se* did not exist. However, there was nothing in the evidence or findings to show that the undertaking establishment was a nuisance in fact. The evidence is not set forth and it was merely assumed that a few general findings were as paraphrased in the opinion. The holding of funerals was not involved. However, the court distinguished that case from the case of *Beisel* v. *Crosby, supra,* saying that the Supreme Court of Nebraska was considering a set of facts that was altogether peculiar and different from the case there involved. The facts of the Nebraska case were extensively set forth and appear to be much more similar to the instant case than those apparently involved in the Dean case. In the instant case the court found that the establishment of a mortuary and funeral parlor would constitute a nuisance in fact, and found facts showing physical as well as mental injury to plaintiff and the members of his family. This finding was supported by some substantial evidence. The question was one of fact for the trial court and under the circumstances we do not regard the Dean case as controlling here.

The plaintiff contends that the court erred in ruling that the building restrictions contained in the agreement of certain lot owners in Oildale Annex were not binding on the defendant. It becomes unnecessary to determine this question. Judgment was in favor of plaintiff based on the second count of the complaint and has been affirmed on appeal. The plaintiff did not appeal from the judgment or any part of it. Under such circumstances the point cannot be urged by plaintiff on this appeal. (*Miller* v. *More,* 170 Cal. 557 [150 P. 775] ; *Griffin* v. *City of Los Angeles,* 134 Cal.App. 763 [26 P.2d 655].)

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied November 19, 1948, and appellant's petition for a hearing by the Supreme Court was denied December 23, 1948.