## SMITH v TROY (city)

Ohio Appeals, 2nd Dist, Miami Co

No 337.   Decided Dec 3, 1934

Goodrich & Goodrich, Troy, for plaintiff in error.

Paul G. Gingrich, Troy, for defendant in error.

A certified copy of the zoning ordinance so called, is presented in evidence and attached to the bill of exceptions as Exhibit "A". The ordinance is a full and comprehensive enactment prepared in detail and dealing with every section of the city. Its penal provisions are provided in §23 of the ordinance.

The specific charge against the defendant, Smith, in the Mayor's Court as disclosed by the affidavit, in substance, is as follows:

"On the 12th day of February 1934 * * * unlawfully did then and there operate, control and manage a barbershop within the city, to-wit, on the northwest corner of Monroe Street and McKaig Avenue, contrary to Ordinance 1696, etc."

Ordinance 1696 is the zoning ordinance above referred to.

It is disclosed from the map attached to the ordinance that the northwest corner of Monroe Street and McKaig Ave. is within the territory described under §4 designated as "B four family district". This §4 sets forth under nine subdivisions the character of structure and uses to be made thereof within its bounds.

A barbershop is not designated as one of the uses. The first subdivision of §4 reads as follows:

"1. Any use permitted in the 'A' residence district."

Section 3 provides the permtited uses in the " 'A' residence district" under nine subdivisions. The conducting of a barbershop is not specifically mentioned as a permitted use under any of the nine subdivisions set out under §3.

It is the contention of counsel for the defendant, Smith, that subdivision 9 in the "A" group is broad enough to include a barbershop. §9 reads as follows:

"9. Uses customarily incident to any of the above uses when situated in the same dwelling, including home occupation such as the office of a physician, surgeon, dentist, musician or artist."

There are some further provisions contained in subdivision 9 not pertinent to the question now being considered. In the trial court all the evidence presented on the question was to the effect that a residence was not a customary place for the conducting of a barbershop.

## OPINION

By BARNES, J.

The petition in error sets out 9 separate specifications of error. However, in the briefs of counsel these are grouped and all questions may be summarized under two general propositions as follows:

1. The evidence is insufficient to establish the claimed violation of the zoning ordinance.

2. That the provisions of the zoning ordinance insofar as it may apply to the business of the defendant is unconstitutional for the reason that it is indefinite in its provisions and further is an unwarranted and unreasonable exercise of police power.

In the Mayor's Court the defendant, Smith, did not testify nor did he present any evidence in his defense.

Considering the question on the basis of common knowledge and as applied generally in other communities, we cannot say that it is customary to conduct barbershops in dwellings, although there are instances of such. If the question of common knowledge is limited to the city of Troy, which it probably should be, then we must say that the question of common knowledge cannot apply.

The claim is further made that the following "such as the office of physician, surgeon, dentist, musician or artist" would include the business or profession of barbering. We can see nothing similar in the conducting of a barbershop with the office of a physician, surgeon, dentist, musician or artist. The mere statement is the strongest argument.

The fact that barbers are required to take examinations under the present law merely goes to the right. or authority to engage in the business. This does not change the general character or classification. It does not make a barbershop an office and therefore can not be classified "such as an office of a physician, etc."

The claim is further made that there is no specific provision of the ordinance prohibiting the operation of a barbershop in either the " 'A' residence district" or the " 'B' four family district." This claim is answered by the provision of the ordinance which makes the specific provision as to the uses in the various districts and excludes all others. There is no specific exclusion of any kind or character. If the business is not included in the specific provisions, then it is excluded by the general terms of the ordinance.

For instance, in the " 'A' residence district" we find this provision:

"No building or land shall be used and no building shall be hereafter erected or structurally altered unless otherwise provided in this ordinance, except for one or more of the following uses."

Under the provisions as to the " 'B' four family district" is found the following:

"No building or land shall be used nor building shall be hereafter erected or structurally altered unless otherwise provided in this ordinance, except for one or more of the following uses."

There are other zones wherein barbershops are permitted and in fact there is no legitimate business but what is permitted in some zones in the city.

It should be further stated that the ordinance specially provides that any lawful use of premises within the city limits existing at the time of the passage of the ordinance, although not now conforming to the provisions thereof, may be continued, but if such non-conforming use is discontinued, all future use of the premises shall conform to the provisions of the ordinance.

According to the evidence, the defendant located his barbershop in district "B" after the passage of the ordinance and in fact only a short time prior to his arrest.

The constitutionality of the zoning ordinance is attacked on two grounds. The first being that it is indefinite in its provisions as it applies to plaintiff. In support of this claim 12 A.L.R., 1436 is quoted from. This citation refers to the well recognized principle of law that penal statutes not prescribing definite rules of conduct or vesting in public officials a discretion uncontrolled by definite legislative enactment are unconstitutional and void. In the instant case it is sought to give application to this principle wherein the ordinance under "A" and "B" in addition to specific uses also under subdivision 9 includes "uses customarily incident when situated in the same dwelling including home occupations such as, etc." It is urged that the provisions of this subdivision "such as, etc." is indefinite and necessarily vests in the commission and finally in the court a discretion as to whether or not the particular use complained of, if not specifically provided for, is embraced in the terms "such as the office of physician, surgeon, dentist, musician or artist."

We are unable to agree with counsel that the ordinance is indefinite in the particulars complained of, nor do we think that a discretion is vested either in the commission or the court. The fact that there may be occasions wherein it becomes necessary to determine whether or not the particular use is a "home occupation such as, etc.", but such cannot properly be designated as a discretion. On the other hand, it is a determination whether or not under the particular facts of each case, the terms of the ordinance have been violated. Neither the commission nor the court have any discretion to determine what in their judgment would be a proper use in the various zones, and these is no language in the ordinance from which any such authority can be inferred. We do not think the ordinance is subject to attack on this ground.

The constitutionality of the ordinance is

further attacked upon the ground that it is an invalid and unreasonable exercise of police power.

The principle is well recognized that the right to devote real estate to any legitimate use is properly within the protection of the constitution and that the legislature may not, under the guise of police power, impose unnecessary and unreasonable restrictions upon the use of private property; that municipalities in the exercise of police power, where reasonably necessary for the preservation of public health and morals, have the right to enact zoning ordinances even though they may result in the impairment of the full use of property by the owner thereof. **Pritz v Messer, 112 Oh St, 628.** This authority is granted under **Article 8, §3 of the Ohio Constitution** and reads as follows:

"Section 3 (Powers).. Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce, within their limits, such local police, sanitary and other similar regulations as are not in conflict with general welfare."

The General Assembly by legislative enactment has specifically provided for the adoption of plans for dividing municipalities into zones or districts in the interests of the public health, safety, convenience, comfort, prosperity or general welfare. §§4366-7 to 4366-12 GC, inclusive.

Judge Allen rendering the opinion in the case of Pritz v Messer, supra, at page 637, referring to the contsitutional provisions of the legislature, uses the following language:

"Furthermore, if such a legislative enactment had not been made a majority of the court are of opinion that under the home rule provision of the **Constitution (Article XVIII, §3)** the regulation of the bulk, area, and the use of buildings is a function of local self-government and that therefore the municipality is doubly empowered to enact legislation upon this subject, having been given such authority both by the legislature and by the Constitution."

Mere aesthetic reasons will not warrant the limitation of the legitimate use of private property. The exercise of the police power is only warranted on the ground that the zoning plan is in the interest of public health, safety, morals or general welfare.

The question of the constitutionality of a zoning ordinance has been the subject of much litigation in this and other jurisdictions, including the Supreme Court of the United States.

In the case of **Pritz v Messer, 112 Oh St, 628,** the zoning ordinance was upheld. This case arose in Hamilton County and involved the building of an apartment building in territory not permitted under the zoning ordinance.

In the case of **Youngstown v Kahn Bldg. Co.,** decided by the Supreme Court on the same day as the Pritz case and reported in **Volume 112 Oh St, page 654** wherein the same question was involved under somewhat dissimilar facts, the zoning ordinance was not upheld. Apparently the court distinguished the two cases in that the zoning ordinance in Cincinnati was a comprehensive enactment including the entire city, whereas in the Youngstown case the zoning ordinance included only a small fraction of the city and was designated a "block ordinance." There was a further distinguishing feature that the Youngstown ordinance contained a provision that as a condition precedent to the erection of the building in question, it was necessary to secure the consent of the property owners within a certain radius. Attention was called to the fact that this vested a discretion in the property owners. Such property owners might grant or withhold consent on any ground that seemed proper to them. This would not be the exercise of a police regulation. The zoning ordinance could only be sustained in the interest of public health, safety, morals or general welfare.

A very enlightening decision on the subject of zoning ordinances is to be found in the case of Village of Euclid v Ambler Realty Co., 272 U. S., reported at page 365. The opinion was by Justice Sutherland. The Ambler Realty Company was the owner of a large unimproved acreage in the city of Euclid, Ohio and it was claimed that the restricted use of this acreage, under the zoning ordinance, was an arbitrary attempt to prevent the natural and proper development to the land. The ordinance was sustained. At page 390 of the opinion Judge Sutherland speaks as follows:·

"The decisions of the state courts are numerous and conflicting; but those which broadly sustain the power greatly outnumber those which deny altogether or narrowly limit it; and it is very apparent that there is a constantly increasing tendency in the direction of the broader view."

Again on page 391: .

"As evidence of the decided trend toward the broader view, it is significant that in some instances the state courts in later decisions have reversed their former decisions holding the other way."

Syllabus 8 reads as follows:

"8. The police power supports also, generally speaking, an ordinance forbidding the erection in designated residential districts, of business houses, retail stores and shops, and other like establishments, also of apartment houses in detached-house sections—since such ordinances, apart from special applications, can not be declared clearly arbitrary and unreasonable, and without substantial relation to the public health, safety, morals, or general welfare."

In the case of **State ex v Stenger, 120 Oh St, 418,** a zoning ordinance within the city of Cincinnati was sustained. Judge Matthias rendering the opinion on page 423 speaks as follows:

"The question of the constitutional validity of ordinances excluding business and trade from residential districts has been definitely decided adversely to the contention of the relator. Decisions of the state courts have been somewhat in conflict upon the question of the constitutionality of such provision, but it seems altogether unnecessary to discuss or even consider the many decisions of state courts of last resort upon the subject, since the decision of the Supreme Court of the United States in the case of Village of Euclid v Ambler Realty Co., 272 U. S., 365 * * * where the court fully and completely upheld regulations and restrictions such as those involved in the ordinance in the instant case as a valid exercise of the police power * * *."

The syllabus reads as follows:

"The provision of a zoning ordinance, limiting the subsequent addition, extension or substitution of business buildings or the use thereof, existing in a residence district at the time of the enactment of such ordinance, where it does not appear that such restrictions have no real or substantial relation to the public health, safety, morals or general welfare, is a valid exercise of the police power and is not violative of either the state or federal constitution."

We have also been referred to the well considered case of **State ex City of Lakewood, 41 Oh Ap, page 9 (10 Abs 705).** This case was affirmed by the Supreme Court. See **125 Oh St, 399.**

In the light of the recent decisions and after a careful consideration of the reasoning of the court on the facts under consideration, we are constrained to the view that we must hold the ordinance constitutional.

Finding no prejudicial error in the findings, orders and judgment of the court below, the judgment will be affirmed and the petition in error dismissed at costs of plaintiff in error.

Exceptions will be allowed to plaintiff in error.

HORNBECK, PJ, and KUNKLE, J, concur.