**HARFORD v DAGENHART**

Ohio Appeals, 2nd Dist. Clark Co

No 362. Decided Jan 27, 1936

George S. Dial, Springfield, for plaintiff.
A. C. Link, Springfield, for defendant.

## OPINION

By HORNBECK, J.

We then come to a consideration, first, of the case made by the plaintiff upon the charge that the operation of the funeral home in the manner and with the effect which we have heretofore set forth will constitute a nuisance.

There are but three cases in Ohio cited, or which we find upon independent research which are germane to the narrow question presented. They are **Koebler et v Pennewell et, 75 Oh St 278, Mosier v Jones, 1 Abs 721 and 801, and Bauer v Huth, 1 Abs 676.** The last mentioned case is a Nisi Prius opinion from Hamilton County and the Mosier case was determined in this court in an unreported opinion from Franklin County. These two cases hold:

"An undertaker's establishment in a residential district is not a nuisance per se."

Judge Ferneding in the opinion in the Mosier case supports the position of the court upon the authority of Koebler v Pennewell, supra, and among other things says that:

"In the Koebler case the question was presented to the Supreme Court whether or not the establishment there under consideration was a nuisance per se."

We have examined the Koebler case with care and if it be granted that the question whether or not the establishment there considered was a nuisance per se was presented the court certainly gave no consideration whatever to it. The only reference to the subject is in the opinion of Judge Crew at pages 285-6, where he said:

"But, on the other hand, if the above finding of the Circuit Court was erroneous and unwarranted, then upon the record, there being no finding that the place was a nuisance per se, nor evidence to support such finding, plaintiffs were not entitled to any relief, and their petition should have been dismissed."

The prayer of the petition was to restrain the defendants from establishing, keeping, or using in and upon the premises a "morgue." The Circuit Court based its conclusions of law upon an express finding that the defendants were not conducting a morgue in violation of §3586-A, Revised Statutes. It is true that the opinion of this court in Mosier v Jones, supra, has weight and effect. However, it does not purport to be an original determination of one of first impression. In fact, the writer of the opinion expresses doubt as to the wisdom of the determination and predicates it upon the law as found to have been enunciated in the Koebler case. But, if Mosier v Jones announces the law it is not decisive of our case because the question here is not one of nuisance per se, but whether under the proof a nuisance is established. So that, for determination of the proposition which is before us we must look beyond the Ohio case.

Most respectable authority is cited by the plaintiff from Cooley, Torts, 4th Edition, 1932, Vol. 3, page 180, wherein that author epitomizes the gist of the decisions in this language:

"By what appears to be the weight of modern authority, however, it is held that the location of such a business (undertaking establishment) in the residential district is sufficiently objectionable to make it a nuisance."

We have examined many authorities, some of which we discuss. That an undertaking establishment is not generally a nuisance per se, although it has frequently been so held in exclusive residential districts, seems to be established by the great weight of the later authorities. It has been so determined in Alabama, Arkansas, California, Georgia, Indiana, Iowa, Kansas, Maryland, Michigan, Minnesota, New Jersey, New York, North Dakota, Oklahoma, Texas. Virginia and Washington. The cases supporting the above statement and upon the general subject "Undertaker's Estab-

lishment as a Nuisance" will be found collated in 3 A.L.R. 966, 23 A.L.R. 746, 43 A. L.R. 1166, 35 A.L.R. 890, and 87 A.L.R. 1061.

In most of the cases the operation of the undertaking establishment in a purely residential district was held under the facts to constitute a nuisance.

There are certain elements running through the cases considered which without exception have been pronounced so objectionable as to warrant equitable intervention. Some of these are offensive, noxious odors whether emanating from the embalming of dead bodies or from chemicals used therewith; the possibility of movement of flies from establishments, Densmore v Evergreen Camp (Wash.) 112 Pac. 255; lack of proper drainage, possibility of contamination through water supply, the conduct of post mortems, danger of contagion and disease, Goodrich v Starrett (Wash.) 184 Pac. 220; the operation of a morgue, Koehler v Pennewell, supra; if the annoyance is of a real and substantial character and such as impairs the ordinary enjoyment, physically, of the property within the vicinity of the establishment. Pearson & Son et v Bonnie, (Ky.) 272 SW 375.

The slight divergence of holding arises respecting the extent to which the annoyance to plaintiff and residents in the immediate district is esthetic or sentimental, entirely mental or results in discomfort and disquietude of a real and substantial character and such as impairs the ordinary enjoyment of the property and the physical well being of those in the neighborhood. Stoddard v Snodgrass, (Ore.) 241 Pac. 73; Pearson v Bonnie, supra.

The following cases support injunctive relief against the proposed location of funeral parlors as threatened or anticipated nuisances; Higgins v Bloch, (Ala.) 104 So. 429, Id., 112 So. 739; Leland v Turner (Kan.) 230 Pac. 1061, Mildahl v Holberg (N. D.) 214 N. Y. 802; Stoddard v Snodgrass, supra; Dillon v Morgan (Mich.) 211 N. Y.

There has been a definite trend toward the determination that the operation of an undertaking parlor in a residential section is a nuisance, though it is conducted in the usual manner of operating such establishments. In fact, of sixteen reported cases in the United States since 1925, fourteen of them have resulted in the issuance of injunctive relief. A typical case, well-considered, is Street v Marshall (1927) (Mo.) 291 SW 494, where the contention was made that as all questions of communicating disease or fouling the air with noxious or offensive odors or gases were removed there

could be no finding of a nuisance. The court said:

"In other words, in order for such an establishment to constitute a nuisance, its character must be such as to directly affect the health or grossly offend the physical senses. This position is without support in the decided cases. * * * A careful reading of the cases will disclose that what has been stressed, and * * * made the basis of injunctive relief, is this: Constant reminders of death, such as an undertaking establishment and the activities connected with it, give rise to, impair in a substantial way the comfort, repose, and enjoyment of the homes which are subject to them."

In Arthur v Virkler (1932) 258 N. Y. Supp. 886, the injunction was granted, restraining the location of an undertaking establishment in a residential district, upon the proof that the resulting injury to the plaintiffs was the mental annoyance or depressing effect upon them and the members of their household, the loss of comfort and enjoyment in their properties and a diminution in the rental value thereof.

In an early leading case, Saier et v Joy et (Mich.), 164 NW 507 it is said:

"It requires no deep research in phychology to reach the conclusion that a constant reminder of death has a depressing effect upon the normal person."

"A mere trifling annoyance, inconvenience or discomfort to one with too fastidious or refined tastes will not constitute a nuisance, yet a nuisance exists where noxious odors or other conditions are a substantial annoyance or a physical discomfort to an ordinary person, or an injury to his health or property." Joyce on Nuisances, Par. 157 & 162; Wood on Nuisances, Par. 600, 20 R.C.L. 382-3.

"Disturbance of the enjoyment of the comfort of one's home has been classified as within the sphere of the physical." Bragg v Ives (1927) (Va.) 140 SE 656.

See also Jordan v Nesmith (1928) Okla. 269 Pac. 1096, where the only reason for the injunction was that the depressing effect upon the plaintiffs and others residing in the immediate neighborhood would break down their resistance and render them more liable to contract diseases.

To like effect the late cases of Weinmann v Miles (1931) Kan., 4 Pac. (2d) 437; Higgin v Bloch (1925) supra.

For a case in which the facts are almost

identical with those of the instant case see Albright v Crim (Ind.) 105 NE 304.

An injunction was denied in Stoddard v Snodgrass (1925) supra, but the facts required the holding. The undertaking establishment to which objection was made was immediately across the street from another funeral home which had for many years been conducted by the defendants. The district was not zoned. A permit to erect the building in which the business was to be conducted had been granted after a contested hearing, a new building had thereafter been erected at a cost of $45,-000.00, and the court found that no proof had been made of depreciation of value of properties in the vicinity of the establishment of defendants.

We have carefully read all of the cases cited and especially in the annotations in 87 A.L.R., supra, and of course they present facts differing somewhat from this case, and in some of the states, notably Alabama and Washington, there are statutes which differ from our nuisance statutes. A very few of the cases present proof of aggravated conditions and circumstances not attending the proof here, but in the main where injunctive relief was granted the facts parallel in a remarkable degree those to be found in this case. We can safely say that the conclusions of Cooley in his latest treatise on Torts heretofore quoted and the headnote of the annotator in 87 A.L.R. 1062, are almost universally supported in the jurisdictions from which the cases are cited.

The headnote to which we refer is as follows:

"The great weight of recent authority is to the effect that the establishment and operation of an undertaking business in the purely residential section, under circumstances which would cause a depressed feeling to the families in the immediate neighborhood and a constant reminder of death, appreciably impair their happiness, and weaken their power of resisting disease, and depreciating the value of their property, constitute a nuisance."

The facts established in this case include each and all of the essentials to the declaration of a nuisance which are delineated in the quoted portion of the annotation above.

It is our conclusion, then, that although there is little authority in Ohio on the subject, the overwhelming weight of adjudication elsewhere requires the conclusion that the plaintiff has established her claim that the operation of the funeral establishment of the defendant in the manner in which it is proposed to be operated and at the place where it will be conducted, namely, in a residential section is, under the facts appearing, a nuisance.

The next question for our consideration is raised upon the second cause of action of the amended petition, namely, the effect of the Zoning Ordinance of the City of Springfield and amendment thereto on the right of the defendant to conduct a funeral parlor in his residence.

It does not appear that any special permit has been issued to the defendant as provided in Subdivision 2 of §24 of the Ordinance. Therefore, he is violating the Zoning Ordinance in operating his establishment unless as, "an accessory use to his dwelling," comes within the specification of "other professional person" and is conducting his profession "with the assistance of not more than one non-resident assistant." The section says that the exception extends to the "office of a physician, dentist, surgeon, or other professional person, etc."

It is claimed that the callings of embalmer and funeral director come within the classification of professional persons. It is urged that embalming is an art and science that has been practiced for more than 6000 years, was known to the ancient Egyptians, and so recognized, and that the State of Ohio has, by the enactment of §§1335 to 1344 GC, established that an embalmer and a funeral director are professional men. If the Code definitely classified such calling as professional and if the Zoning Ordinance of the City of Springfield had been enacted subsequent thereto, it would follow almost conclusively that the term "other professional person" includes an embalmer and funeral director. However, it appears that the original Zoning Ordinance was enacted in 1930 and the amendment under consideration January 25, 1932, whereas the sections of the General Code relating to embalmers and funeral directors were not effective until September 27, 1933. So that a classification if so made by the State Legislature of embalmers and funeral directors as professional men in 1933 would have little or no significance respecting the meaning of the term "other professional person," as employed in the ordinance in 1930 and 1932.

An examination of the Code as it relates to embalmers and funeral directors and their employment is of interest. The act, §1335-3 GC et seq, sets up a comprehensive plan for the creation of a State Board

of Embalmers and Funeral Directors, the appointment of the members thereof and their term of office, the selection of a salaried secretary to the Board, provides for application for and issuance of licenses, refusal to issue, suspension and revocation of licenses, payment of fees, etc.

The first characterization in the act of those coming under its provisions is found in §1335-3 GC, defining the powers and duties of the Board of Embalmers and Funeral Directors, wherein it is said that:

"Said board shall have the power * * * to adopt and promulgate and enforce such rules and regulations for the transaction of its business and the management of its affairs, the betterment and promotion of the educational standards of the **profession** of **embalming** and the standards of service and practice to be followed in the **profession** of **embalming** and **funeral directing** in the state of Ohio as it may deem expedient and consistent with the laws of the state of Ohio." (Emphasis ours throughout quoted parts of act).

And in the same section, fixing the qualification of applicants for licenses:

"At not less than nine (9) months' training in an approved or accredited school of embalming and prior credits of not less than four years of high school, two years' training as an apprentice under an embalmer duly licensed in the state of Ohio, and proof to the satisfaction of the board that applicant has actually embalmed not less than twenty-five (25) dead human bodies, and the board shall further determine and fix the fees, not to exceed a total aggregate sum of ten dollars, to be charged each applicant for application, registration, examination and issuance of, and not to exceed the sum of five dollars per each renewal of licenses of persons desiring to engage in the **profession** or **business** of **embalming** and/or **funeral directing**."

In §1335-6 GC, providing for the application and issuance of licenses and reciprocal licenses. it is said:

"Any person desiring to engage in the **profession** or **business** of **embalming** or **funeral directing** or both as defined in this act, shall make such application, * * *"

And this language:

"No person shall carry on the **business** or **profession** or discharge any of the duties of **embalming** or **funeral directing** as defined in this act unless there has been issued to him a license in full force and effect, etc."

And later:

"A license shall not be issued to more than one (1) person and not more than one (1) person shall carry on the business of **funeral directing** or **embalming** or both under one license except only as otherwise provided in this act."

And:

"Any person now holding a license granted by any authority of this state to carry on the **profession** of **embalming** shall not be required to make a new application, etc."

In §1335-10 GC this provision is made:

"Any person who, at the time of the passage of this act, is actively engaged in the **profession** or **business** of **funeral directing** shall, within sixty (60) days after the passage of this act, register as such funeral director with the board on a form prescribed by said board, * * *."

And in §1344 GC:

"Any person who shall practice in this state the **science** of **embalming**, * * * without having complied with the provisions of this act, shall be guilty of a misdemeanor * * *."

This rather full quotation from various sections of the act is conclusive that, with but two exceptions in §1335-3 GC and part of §1335-6 GC, following "embalming" and "funeral directing," the words "profession" and "business" are used jointly. There is some indication that the word "profession" is meant to apply to embalmers and "business" to funeral directors, or "business" to the combination of the two. The question naturally arises whether or not the act discloses a positive purpose to classify embalming and funeral directing separately and in combination as professions. Determination of this question is not required in this case.

The section of the Ordinance under consideration names physicians, dentists and surgeons, all of whom clearly are professional persons and it is probable that when these recognized professional classifications are followed by the term "other professional person," (emphasis ours) is meant such professional persons as generally came within the comprehension of the learned professions at the time of the enactment of the Zoning Ordinance.

Members of many occupations which have long been recognized as trades or crafts, such as plumbing, barbering, cosmetology and others, are required to meet certain tests and to be licensed. That the

term "other professional person" was used in a restricted sense appears by its relation to the words "physician," "dentist," "surgeon," and also because dressmaking, millinery, cosmetology, etc., which in a broader sense may be considered professions may only be carried on in an accessory building located to the rear of a residence. §4 (a) of the Ordinance.

In the case of Smith v City of Troy, 18 Abs 476, Miami Co., unreported, 1934, we were required to construe the effect of zoning ordinance upon the operation of a barber shop in the residence where the barber shop in the residence where the barber lived. The controlling section of the ordinance provided that uses could be made of residences in what had been designated dwelling house sections, under the following conditions:

"Uses customarily incident to any of the above uses, when situated in the same dwelling, including home occupation such as the office of physician, surgeon, dentist, musician or artist."

We held that a barber shop was not an office which could be classified "such as the office of physician, surgeon, dentist, musician or artist."

The cited case has peculiar application to (a) §4 of the Springfield Ordinance, defining accessory use in residential districts, namely:

"An accessory use customarily incident to use permitted in a dwelling house district or an apartment house district shall be permitted in respectively a dwelling house district or an apartment house district, if on the same lot with the permitted use."

We have considerable difficulty in finding that the operation of an undertaking establishment in an exclusive residential section is a use customarily incident to the use of dwellings in such district.

We have found but one case directly in point on the narrow proposition here presented, namely, O'Reilly v Erlanger, Sheriff, 95 N. Y. Supp. 760, wherein it is held:

"1. The courts will take judicial notice of the general duties and characters of those occupations which are classified as professions.

"2. A desk, safe and candelabra belonging to an undertaker and used by him in his business are not professional instruments within Code Civ. Proc., Par. 1391, exempting 'professional instruments, furniture and libraries' from execution; such provision does not apply to the office furniture and tools of an ordinary business man."

On page 76, 161 of the opinion it is said:

"I am of the opinion that a jury would be justified in finding, upon the evidence set out in this record, that the same was a part of the 'working tools' of the plaintiff in his undertaking business, * * *. The plaintiff, however, claims his exemption of the candelabra, desk and safe as part of his necessary 'professional instruments and furniture.' He is an embalmer as well as undertaker; but his embalming instruments were not levied upon. The business of embalming and undertaking is not a profession within the meaning of the statute, nor does the fact that an embalmer must be licensed make him a professional man. A druggist must have a license to dispense medicine, but this does not make him a professional man, unless he chances to be a physician as well. So, in the City of New York, an auctioneer and pawnbroker must be licensed, as well as barbers and persons who conduct employment agencies, and certain others who engage in ordinary mechanical work. The term 'professional' can only relate to one of those occupations universally classified as professions, the general duties and character of which the courts must be expected to understand judicially." Citing Pennock v Fuller, Mich., 2 NW 176.

Undoubtedly, those who framed the Zoning Ordinance of the City of Springfield used the words "other professional persons" in a sense that it was then generally understood as having reference to those professions which are recognized as the learned professions, or which bear such relation thereto as to necessarily be included in the term and, of course, without benefit of classification in subsequent state legislation. Then, too, the results and conditions which would flow from the conduct and operation of offices by physicians, surgeons or dentists, as compared to the effects growing out of the conduct of funeral parlors, as such operation might affect the general usages of residential sections, must be given consideration. The section of the Ordinance says that the office of a physician, dentist, surgeon, etc., may be located in the dwelling or apartment, etc. A physician's, surgeon's or dentist's office will attract but few people and they will generally come to these offices and leave them

singly, seldom in groups. The very nature of the services of anyone of these professions is personal and the treatment, advice or ministration given to individuals. Although such professions may enjoy an extensive clientele, their coming and going would make no considerable impression upon, nor affect the ordinary mode or manner of living or enjoyment of the homes in a purely residential section. The contrast between the operation of a funeral parlor and the normal activities thereof and the operation of the offices of the professions heretofore discussed is obvious without further characterization. We do not deem it necessary to fix the classification of an embalmer and funeral director under the Statute.

It is our judgment, however, that if, when the ordinance was enacted, an embalmer could be said to be a professional person it would be giving undue flexibility to the term to say that a funeral director was also a professional person. The recognized services which he performs, in the ordinary acceptance of the word, signify that he was not then regarded as a professional person, though of course great skill and marked ability may be and undoubtedly are possessed by many funeral directors. Both callings in combination are essential to the operation of a funeral establishment.

It is our judgment, then, that considering the term "professional person" in the light of what was meant by the framers of the Zoning Ordinance and amendment when enacted, and in view of the purposes meant to be accomplished by the ordinance, the conduct of a funeral parlor in the residential section defined by the Zoning Ordinance is not within the exception of §4 (c) and its operation is prohibited by the Ordinance.

There is one further question, namely, whether or not it appears that the defendant had more than one non-resident assistant. We are of opinion that he did not; that the times when it would be necessary to employ more than one man to assist, largely outside, in the conduct of funerals would not require the classification of such employees as regular non-resident assistants in the office.

We, therefore, find that plaintiff has sustained the averments of the first and second causes of action of her petition and that the injunction should be granted as prayed. It will be so ordered.

BARNES, PJ, and BODEY, J, concur.