CLARA M. HEIMERLE and Others, Plaintiffs, v. VILLAGE OF BRONX-VILLE and Others, Defendants.

CHARLES A. BENEDICT and Others, Plaintiffs, v. VILLAGE OF BRONX-VILLE and Others, Defendants.

Supreme Court, Special Term, Westchester County, July 6, 1938.

*Benjamin L. Fairchild,* for the plaintiffs.

*L. Arnold Frye* [*E. J. Dimock* and *J. D. Rawlings* of counsel], for the defendants.

ALDRICH, J. These two actions were tried together. Both involve the same questions. Both are brought to obtain the same relief. In the Heimerle action the plaintiffs are the owners in fee of the real property in question. In the Benedict action the plaintiffs are the lessees of the premises in possession under a lease from the owners, containing an option to purchase. Each action seeks to have it adjudged that the premises in question may be lawfully used for the purposes of an undertaking parlor or funeral home, and to restrain any interference with such use by the defendants, etc. The questions involved relate to the proper interpretation of a building code and a zoning ordinance, and the validity of an amendment to the zoning ordinance adopted on March 8, 1937, which prohibits the use of any building or premises for a mortuary, undertaking or embalming parlor, funeral chapel or similar plant or establishment within two hundred feet of any residence zone.

The property is located in the incorporated village of Bronxville. The official lot number is lot 41, block 3, section 2, on the village map. The street number is 105 Parkway road. The lot is fifty feet front and rear by one hundred feet deep. It is located on the west side of the street. The property is zoned in a business "A" district. The southerly line of the lot is the north line of a residence " D " district. This residence district across on the east side of Parkway road extends a little further to the north so that the division line between the business "A" district and the residence " D " district on that side of the street is about opposite the middle line of this lot. On the east side of the street in the residence district and immediately adjoining the boundary line of the business district is a large apartment house containing forty-one apartments. Further to the south on that side of the street are various other properties zoned and used for residential purposes. Upon the plot adjoining the premises in question in the residence district is a house used for dwelling purposes. Further to the south on the same side of the street are many other buildings likewise used for residence purposes and located in the residence district.

Upon the plaintiffs' lot there is erected what appears to be from the photographs a rather attractive looking three-story frame building with a wooden covered porch extending across the front. The house was built prior to 1901. Originally it was a two-story and a half one-family house. It was occupied by the owner for

residential purposes until 1901 and then rented for two years to a private family. The residence use continued for a one-family house purposes until 1916 when it was changed into a three-family house, one apartment on each floor. Both of the upper floors have always been used for residential purposes exclusively. The first floor was used exclusively for residential purposes until January, 1929. From January, 1929, until March 31, 1931, the first floor was occupied by a veterinary. Some of the rooms were used for dwelling purposes, some for office purposes, and he was accustomed to give treatments there when necessary but no regular kennels were maintained or anything of that kind. A small sign on the outside of the building indicated his office. After he left, the first floor, like the others, was used exclusively for residential purposes until February 1, 1937. The plaintiffs Benedict became interested in the property in the latter part of 1936 and indicated to the superintendent of buildings their desire to use the premises for a funeral home on the first floor, the other two floors to be used for residence purposes. The superintendent of buildings notified the plaintiffs that the Building Code would not permit the conversion of the building from a residence into a business, because the building was of frame construction and did not conform to the requirements for buildings to be erected in a business district and because the Building Code specified that no change of use should be made of any building or part thereof that was not consistent with the provisions of the ordinance. Notwithstanding this definite warning of a possible violation on February 1, 1937, the plaintiffs Benedict took the lease of the property from the owners, with the option to purchase. By the lease the use of the premises was limited to a private residence except that " nothing herein contained shall be construed to prevent the tenant from using said premises for an undertaking establishment and funeral home conducted by the tenant." The tenants thereupon proceeded to use the first floor of the premises for a funeral home. It does not appear that any structural alterations were made, but some redecorating was done inside the building. The tenants used the first floor for the business. The back porch was used for embalming and the other rooms on the first floor for the accommodation of the body and people coming in, etc. The tenants used the third floor for dwelling purposes and the second floor was left unoccupied except for perhaps some odd pieces of furniture. This use continued from February 1, 1937, until August, 1937. In the meantime these actions were commenced. For this change of use of the first floor from residential purposes to the funeral home, no certificate of occupancy was ever obtained or even applied for by the tenants. There also appears to be upon

the premises a detached frame building used for a private garage for two cars. This appears to have been rented from time to time to tenants in the house and sometimes to others from outside. Such use appears to have been in accordance with the provisions of the Building Code and the Zoning Ordinance. Whether it was or not, it cannot be urged as any justification for the change of the house from a residence to an undertaking establishment, and the subject of the garage need not be further considered. On March 27, 1922, the village of Bronxville adopted a Building Zone Ordinance. This ordinance was amended by the substitution of a new ordinance adopted February 12, 1927. The property in question appears to have been always in a business "A" district. Prior to 1931 this particular business district extended further to the south on both sides of the street. In 1931 the ordinance was amended to make the division line between the two districts where it now is, part of the business district being thereby transferred to the residence district. On December 7, 1926, the village also adopted a Building Code. This Code has never been amended since its adoption. The Zoning Ordinance, so far as it relates to the premises in question, has never been amended except that on March 8, 1937, the amendment was adopted which now provides: " No building or premises shall be used, and no building shall be erected or altered which is arranged, intended or designed to be used as a mortuary, undertaking or embalming parlor, funeral chapel or similar plant or establishment within two hundred (200) feet of any residence zone."

The plaintiffs seek the right to use the house upon the lot for a purpose prohibited by this amendment. Their claim is that on the date when the amendment was adopted the building was actually being used for a purpose which the amendment sought to make unlawful, that such use of the property at that time was in fact lawful and not in violation of any provision of either the Building Code or the Zoning Ordinance. That the building was actually being used for an undertaking establishment at that time cannot be doubted. If such use was then a lawful use the plaintiffs would appear to be protected by the provisions of the Zoning Ordinance (Art. 9, §§ 1 and 3). Section 1 protected non-conforming uses lawfully existing on April 12, 1922, or thereafter. Section 3 provided that if any area be thereafter transferred from one district to another district, as by a change in district boundaries, the provisions of the ordinance with regard to buildings or premises existing on April 12, 1922, shall apply to buildings or premises lawfully existing in such transferred area at the time of the passage of such amendment. The defendants, in their brief, concede that the

provision against undertaking establishments within two hundred feet of residence districts, in legal effect, is within the spirit of section 3, and that if the plaintiffs' use of the property as a funeral home when the amendment of March 8, 1937, became effective was lawfully existing, the amendment would not serve to make the use illegal. The first question, therefore, to be determined is whether such use of the building on that date was a lawful use.

Upon this question the Building Code and the Zoning Ordinance must be construed and applied together. Wherever the regulations made under authority of article 6-A of the Village Law (relating to zoning) impose other higher standards than are required in any other local ordinance or regulation, the provisions of the regulations made under authority of article 6-A shall govern, but wherever the provisions of any other local ordinance or regulation impose other higher standards than are required by the regulations made under authority of article 6-A, the provisions of such local ordinance or regulation shall govern (Village Law, § 179-d). The same rule is expressly provided for by each of the two ordinances (Zoning Ordinance, art. 1, § 1; Building Code, chap. 1, § 1), each of which requires that " the more drastic shall govern." Applying this rule the devotion of the building to the purposes of an undertaking establishment on and prior to March 8, 1937, was unlawful for two reasons: *First*, because no change of use could be made from a residence to a business without complying with the standards required for the use of a building for business purposes and this building did not comply with such standards. *Second*, because a lawful change of use could be acquired only by a certificate of occupancy and no such certificate was ever obtained or applied for.

For an understanding of the first proposition certain sections of the Building Code and of the Zoning Ordinance must be referred to. The Building Code protected owners in the use of buildings existing when the Code was adopted by providing (Chap. 1, § 17, subd. c) that " nothing in this section shall prevent the continuance of the present occupancy and use of any now existing building, except as may be specifically prescribed by this ordinance or as may be necessary for the safety of life or property." On the date when that Code took effect the building was being used exclusively for residential purposes. The same chapter (§ 18) also provided that " no change of use shall be made of any building or part thereof that is not consistent with the provisions of this ordinance." The Zoning Ordinance also provided (Art. 1, § 5, subd. a) that " it shall be unlawful to use or permit the use of any building or premises or part thereof, hereafter created, erected, changed, converted or enlarged wholly or partly, in its use or structure, until a certificate of occu-

pancy shall have been issued by the superintendent of buildings " and " such certificate shall show that such building or premises or part thereof and the proposed use thereof are in conformity with the provisions of this ordinance." Construing these two ordinances together, it is apparent that while the owner was protected in the continuance of the then existing use for residential purposes, in order to change the use of the first floor from a residence to a business, the standards of the Building Code with reference to such part of the building for business purposes had to be met. By the Building Code (Chap. 2, art. III) buildings are classified. With respect to occupancy and use, they are classified as public buildings, residence buildings and business buildings (§ 1). Public buildings are of a public nature and need not be further considered (§ 1, subd. a). Residence buildings are buildings or parts of buildings in which sleeping accommodations are provided, including among others, dwellings (§ 1, subd. b). Business buildings are buildings or parts of buildings which are not public buildings or residence buildings (§ 1, subd. c). In case a building is occupied or used for different purposes in different parts, the provisions of the ordinance applying to each class of occupancy shall apply to such parts of the building as come within that class, and if there should be conflicting provisions, the requirements securing the greater safety shall apply (§ 1, subd. e). All buildings or structures are classified, with respect to construction, as fireproof, non-fireproof and frame (§ 2). Fireproof buildings or structures are those which are constructed throughout of materials that will resist the action of fire and are constructed as required in article 14 of the ordinance (§ 2, subd. a). Non-fireproof buildings or structures are those which do not conform to the requirements for fireproof buildings or structures, but which are inclosed with walls of approved masonry (§ 2, subd. b). Frame buildings or structures are those of which the exterior walls or any part thereof are of wood or which do not conform to the requirements for fireproof or non-fireproof buildings (§ 2, subd. c). For the purposes of an undertaking establishment, there was no requirement that the building should be fireproof. Frame buildings, which are not over basement, two stories and attic in height and used for residence purposes only, and private garages and other outbuildings accessory to residences, may be erected but only in the residence districts as defined in the Building Zone Law (§ 6). Except when required to be fireproof, or when permitted to be frame, any building hereafter erected may be non-fireproof (§ 5). A frame building could not be erected in the business district (§ 6 and chap. 2, art. 19, § 1). The building was a frame building (§ 2, subd. c). Without considering the multiple details of construction of non-fireproof buildings, this

building was obviously not a "non-fireproof building" because it was not "enclosed with walls of approved masonry" (§ 2, subd. b). A new building constructed such as this could not be erected in the business district. No change of the use could be made of any part of the building that was not consistent with the provisions of the Building Code (Chap. 1, § 18). In order to lawfully use the first floor of the building for business it was at least necessary to have that part of the building "enclosed with walls of approved masonry" (§ 2, subd. b). It was probably also necessary to comply with numerous other structural regulations which need not be considered now. Consequently the change of use was unlawful.

The plaintiffs do not appear to claim that there is anything wrong with the Building Code itself. They have certainly not offered any evidence to show that it is unreasonable as applied to business even of the class which they seek to operate. A funeral home, to a certain extent, is an additional building hazard, through the congregation from time to time of considerable numbers of people, the added weights to be placed upon the floors, and similar considerations. The claim of the plaintiffs seems to be that they could without violating the Building Code use the first floor for an undertaking establishment without any alterations. In that they are wrong as above indicated.

The second proposition is equally clear. Both the Building Code and the Zoning Ordinance have provisions for a certificate of occupancy (Zoning Ordinance, art. 1, § 5; Building Code, chap. 1, § 17). The Building Code provisions requiring such certificates relate only to new buildings and buildings thereafter altered, while existing buildings were not affected by the requirement (Chap. 1, § 17). The Zoning Ordinance, however, is much broader in effect. Under that a certificate of occupancy was required " to use or permit the use of any building or premises or part thereof " thereafter " changed, converted," " wholly or partly in its use," and it was made unlawful to proceed without such a certificate (Art. 1, § 5). " Such certificate shall show that such building or premises or part thereof and the proposed use thereof are in conformity with the provisions of this ordinance " (Art. 1, § 5). Concededly such a certificate of occupancy was not obtained. The devotion of the residential property to business purposes without a certificate of occupancy for such purpose was illegal. (*Seidenberg* v. *Burwell*, 235 App. Div. 745.)

From the foregoing it is obvious that the amendment of March 8, 1937, applies in its terms to this particular property. This brings us to the next question. The plaintiffs claim that such amendment is unreasonable and void for two reasons: *First*, because such amend-

ment, upon its face, is so arbitrary and unreasonable, and lacks such relation to public welfare, etc., that it is void as a matter of law. *Second*, if the amendment be held to be valid upon its face and within the authority of the municipality to adopt, then it is unreasonable and void as applied to the premises of the plaintiffs. These questions will be considered in the order indicated.

The general authority of the village is derived from the Village Law. A village may, by the board of trustees, among other things: Regulate the use of buildings for the purpose of protecting life or property from fire or health hazards (Village Law, § 89, subd. 7); subject to the limitation that the regulations shall be designed to promote the public health, safety and general welfare, etc., regulate and restrict the location of trades and industries and the location of buildings, designed for specified uses and for such purpose divide the village into districts, and prescribe for each such district the trades and industries that shall be excluded or subjected to special regulation (§ 89, subd. 30); enact such ordinances as may be deemed necessary to protect property or life from fire hazards or health hazards (§ 89, subd. 34); regulate and license occupations or businesses for the purpose of preserving and caring for the safety, health, comfort and general welfare of the inhabitants of the village (§ 89, subd. 52); take all measures, do all acts and enact any ordinances, not inconsistent with existing law, which shall be deemed expedient or desirable for the safety and health of its inhabitants, the protection of their property, the preservation of public health, etc. (§ 89, subd. 59); may enact, amend and repeal ordinances, not inconsistent with existing law, for the preservation of health, safety and welfare of the inhabitants and the protection and security of their property whether such authority is specifically granted by such Village Law or other law or necessarily implied therefrom. (Village Law, § 90.) For the purpose of promoting the health, safety, morals or the general welfare of the community, it may by ordinance, among other things, regulate and restrict the location and use of buildings, structures and land for trade, residence or other purposes and for any or all of such purposes it may divide the village into districts of such number, shape and area as may be deemed best suited to carry out the provisions of the act, and within such districts it may regulate and restrict the erection, construction, reconstruction, alteration, repair or use of buildings, structures or land, but all such regulations shall be uniform for each class or kind of buildings throughout each district but the regulations in one district may differ from those in other districts. (Village Law, §§ 175, 176.) These are very broad provisions and within the limitations prescribed the village has broad powers. They

have definite relation to the location and conduct of undertaking establishments, as by reference to the authorities clearly appears. Quite apart from legislative regulation by statute or ordinance, there have been many cases upon the subject of undertaking establishments. The general rule is that such an establishment is not a nuisance *per se*, but may be enjoined as a nuisance in fact when it is sought to be maintained in close proximity to residential property. (See digest of cases and annotations in American Law Reports Annotated as follows: (a) 23 A. L. R. 745; (b) 43 id. 1171; (c) 87 id. 1061; (d) 7 id. 782; (e) 26 id. 953; (f) 55 id. 890.) One was enjoined in this State under a covenant against a trade or business " offensive to the neighboring inhabitants " (*Rowland* v. *Miller*, 139 N. Y. 93), where it was declared the courts can take judicial notice of the offensive character of such a business. One in a residential neighborhood was enjoined in this State as a nuisance, where no covenant or ordinance existed. (*Arthur* v. *Virkler*, 144 Misc. 483.) When we come to the field of legislative control, we find it definitely settled that the business of undertaking is subject to reasonable regulation under the police power in furtherance of the general welfare, etc. The business of undertakers may be a proper subject of municipal regulation, especially under the municipal police power. (43 C. J. p. 439, § 591.) The care of dead human bodies and the disposition of them by burial or otherwise is so closely related to the health and general welfare of a community that the business of caring for and disposing of such bodies may be regulated by license and special regulations under the general police authority of the State. (*People* v. *Ringe*, 197 N. Y. 143; *People* v. *Harrison*, 170 App. Div. 802; affd., 219 N. Y. 562.) Various cases upholding the general right to regulate the business are collected in American Law Reports Annotated. (23 A. L. R. 71 and 104 id. 402.) The undertaking business is of a public or quasi public nature, which, under the police power, the Legislature may regulate and control for the safeguarding of the public health, safety, morals, comfort and general welfare. (*Prata Undertaking Co.* v. *State Board*, 55 R. I. 454; 182 A. 808.) The public policy of this State on the subject, in relation to licenses, etc., is indicated by the Public Health Law (Art. 14, §§ 290–299). The plaintiffs Benedict call attention that they have complied with the State licensing laws. So they have. But it is also within the province of the duly constituted municipal authorities by ordinance to reasonably regulate the location where such business may be conducted. In the exercise of the police power the location of undertaking establishments may be regulated. (43 C. J. p. 439, § 591.) Businesses, occupations or trades which are not nuisances *per se*, but which are liable to become such, or which may become nuisances by reason of the inappropriateness

of the places in which they are conducted, may be excluded from particular localities. (43 C. J. p. 344, § 369.) Undertaking is a business and as such may be excluded from a zone restricted to residential uses. (*Bond* v. *Cooke*, 237 App. Div. 229; *Building Comr. of Brookline* v. *McManus*, 263 Mass. 270; 160 N. E. 887.) In *Osborn* v. *City of Shreveport* (143 La. 932; 79 So. 542) an ordinance made it unlawful to operate an undertaking shop or parlor, except on the business streets of the city. It then named the business streets and declared all others residential. The court said (p. 947): " We find no reason to doubt that plaintiff conducts his business after the most approved methods and with as little offense to those by whom he may be surrounded as the business will admit; but, to the incidents mentioned, there is to be added the fact that the business itself is a gruesome one, and that the psychological influence of being confronted, and having one's family confronted, day after day and at all hours of the day, with death, and its woeful trappings in the shape of hearses and other vehicles, carrying in and out of a neighboring building the mortal remains of some fellow being, is no more enlivening nor wholesome than would be the constant presence of the same corpse, or the immediate proximity of a graveyard; and we take judicial notice that the introduction of such a business into a residential neighborhood, where none has previously been established, will inevitably depreciate the value of the property as well as discommode the owners."

In *Wasem* v. *City of Fargo* (49 N. D. 168; 190 N. W. 546) an ordinance which made it unlawful to establish or maintain an undertaking establishment within those parts of the city " occupied mainly for residences " was held void for uncertainty, but the right to limit the location by a definite provision was upheld. In *City of St. Paul* v. *Kessler* (146 Minn. 124; 178 N. W. 171) the court sustained the validity of an ordinance which prohibited an undertaking business " in any residence district," where such districts were specifically defined by the ordinance. The same ordinance was again upheld in *Meagher* v. *Kessler* (147 Minn. 182; 179 N. W. 732). In *Keiser* v. *Inhabitants of City of Plainfield* (10 N. J. Misc. 496; 159 A. 785) an ordinance was upheld which under a zoning law prohibited a funeral establishment in a residence district, without a variance, and the court decided that the decision refusing the variance was not arbitrary or unreasonable. In *Phillips* v. *Board of Appeals of Building Dept. of Springfield* (286 Mass. 469; 190 N. E. 601) the court reversed an order granting a variance where it was sought to change a dwelling house into an undertaking establishment in a residence district. The court said that the action of the zoning board rested entirely upon the inability of the owner to rent the property as a residence, but that such fact

alone was not a sufficient reason for a variation and did not show that the desired variation would not derogate from the purpose and intent of the ordinance. In *Lewis, Inc., v. Mayor of Baltimore* (164 Md. 146; 164 A. 220) a zoning ordinance prohibited undertaking establishments and funeral homes, and other business, from residential districts, reserving the rights of then existing nonconforming uses. An undertaker made application for a permit to change a private home in a residential district to adapt it as a funeral home. A decision of the board of appeals affirming a refusal of the permit was affirmed. The court said that such an establishment was neither a public nor a private nuisance *per se*, but to justify its inclusion under the zoning law it did not have to be either, since such action would be justified if in fact the proposed use would unreasonably and adversely affect the health or comfort of persons other than the applicant residing in the residence district. The court said it was common knowledge that persons seeking to buy a home would not be likely to select one adjacent to an undertaker's establishment, and that the value of adjacent residential property is diminished by such an establishment. In *Drabble v. Zoning Board of Review of City of Providence* (52 R. I. 228; 159 A. 828) a decision of a zoning board denying an application for a variance under a zoning ordinance was affirmed. The property was located in a dwelling house district. An undertaking business in such a district was not permitted. He asked permission to convert the dwelling house in a business to be used as an undertaking establishment of more elaborate area, etc., than he occupied at the time the ordinance was adopted. In other words, it was an application for the extension of a non-conforming use. It was held that the refusal to grant the permission was not arbitrary or unreasonable, and that it was a matter of common knowledge that undertaking establishments are, according to general experience, undesirable in residence districts, and in their very nature distasteful to those individuals who maintain their residences nearby, and such use of property may well have a tendency to decrease the value of real estate in the immediate vicinity. In *Brown v. City of Los Angeles* (183 Cal. 783; 192 P. 716) it was held that an undertaker who desired to use the location in the heart of a city for his business where it was prohibited by a zoning ordinance could not complain on the ground that there were vast tracts of uninhabited land in outlying districts, in which the ordinance, in effect, prohibited the establishment of undertaking parlors and as to which the ordinance might perhaps be unreasonable. In *Lawrence v. Nissen* (173 N. C. 359; 91 S. E. 1036) an ordinance was upheld which prohibited the maintenance of a hospital, etc., in the corporate limits of the city " within one hundred feet of a building

or house used or occupied as a residence" (p. 361). In *Shepard v. City of Seattle* (59 Wash. 363; 109 P. 1067) an ordinance was upheld which prohibited the establishment or maintenance of any private hospital or sanitarium for the treatment of inebriates or insane persons "within two hundred (200) feet of any private property" (p. 1068). An ordinance prohibiting the erection and maintenance of a gasoline station within 200 feet from the nearest exit from or entrance to a school was upheld in *Matter of David Holding Corp. v. Murdock* (150 Misc. 697; affd. on opinion below *sub nom. People ex rel. David Holding Corp. v. Murdock*, 241 App. Div. 625; affd., 264 N. Y. 609). A similar ordinance prohibiting a gasoline station having an entrance or exit for motor vehicles within 300 feet of the entrance or exit of a school was upheld in *Matter of Peck* (231 App. Div. 99; affd., 256 N. Y. 669).

The determination of the first objection made to this amendment by the plaintiffs must be made upon the ordinance itself. (*Town of Islip v. Summers Coal & Lumber Co.*, 257 N. Y. 167.) The test is, can it be said that the ordinance in this respect on its face passes the bounds of reason and assumes the character of a merely arbitrary fiat? (*Euclid v. Ambler Co.*, 272 U. S. 365, at p. 389; *Town of Islip v. Summers Coal & Lumber Co.*, supra.) If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control. (*Euclid v. Ambler Co.*, supra, p. 388; *Matter of Wulfsohn v. Burden*, 241 N. Y. 288, 296; *Town of Islip v. Summers Coal & Lumber Co.*, supra, at p. 169.) So considered, the court has reached the conclusion that it cannot be said upon mere inspection of the Zoning Ordinance that the end in view is not reasonably pursued by its adoption in order to promote the general welfare under the police power. (*Town of Islip v. Summers Coal & Lumber Co.*, supra). In effect, the village has defined a residence district for the exclusion therefrom of general business and then provided for its extension for an additional 200 feet with respect to the particular business of undertaking establishments. This is not a violation of the provisions of section 176 of the Village Law that all such regulations shall be uniform for each class or kind of buildings throughout each district. By that section the regulations in one district may differ from those in another district. The regulations are uniform with respect to undertaking establishments throughout the district thus extended. Such an ordinance, as indicated by the authorities cited, may be sustained under the general welfare power, without particular regard to zoning ordinances, where the residential area is definitely defined and the limitation reasonable. It cannot be said here that 200 feet is unreasonable as a matter of law so as to invalidate the entire amendment.

Upon the second contention that the ordinance is in fact unreasonable and void as applied to this particular property, the plaintiffs have the burden of proof. The evidence shows that the property immediately adjoins a residence district. The building is within a few feet of another building used for residence purposes. Many other residences exist within the neighborhood on both sides of the street in the residence district. Opposite is an apartment house with forty-one families. The owners may be able to derive more money on a sale for this particular business purpose than for some other purpose but the property is still available for use as a residence and the pecuniary reason alone is not sufficient to invalidate the ordinance. The fact is that if it is properly converted in accordance with the Building Code, the building may be used for many kinds of business with equal facility. The fact that other property within the 200-foot distance in other locations may be unreasonably affected, if such fact exists, does not aid the plaintiffs. (*Brown* v. *City of Los Angeles, supra.*) The only question which the plaintiffs are entitled to argue is that the restriction is unreasonable as applied to this property. (*Matter of Wulfsohn* v. *Burden, supra.*) The burden of proof on that subject has not been sustained by the plaintiffs. The undisputed facts definitely show the contrary.

The suggestion of the plaintiffs that the 1937 amendment was adopted by the board of trustees in bad faith and from improper motives has no legal merit. (*Matter of Peck*, 231 App. Div. 99; affd., 256 N. Y. 669; *McCabe* v. *City of New York*, 213 id. 468.)

The complaint in each action is dismissed, upon the merits, but without costs.

If the defendants will submit a formal decision containing the findings of fact and conclusions of law as proposed by them, with the changes indicated in pencil upon the original in the Benedict action, such decision will be signed.

The proposed findings of fact and conclusions of law submitted by the plaintiffs are hereby passed upon as follows: The following numbered proposed findings of fact are found, to wit: 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, 17, 18, 22, 23, 24, 25, except as to the words " or business " which are refused; 26, except as to the words " or business " which are refused; 27, except as to the words " or business " which are refused; 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 40, 41, 42, 43, 44, 46, 47, 48, 49, 56, 66, 67, 68, 69, 72, 93, 110, 111, except as to the words " a refusal " which are refused; 112, 113, 116, 118 and 122. The other proposed findings of fact are refused. Some of them are contrary to the fact, some of them are really conclusions of law based upon an interpretation of the ordinances and others are entirely immaterial. All of the proposed conclusions of law are disallowed.