Joseph A. Suozzi, J.
Action No. 1 is a declaratory action to declare invalid an ordinance of the Village of Hempstead (Code of Ordinances, ch. 7, art. VI — “ Pregnancy Termination Facilities ”). The plaintiff in this action seeks a preliminary injunction to restrain the Village from enforcing this ordinance and from interfering with plaintiff’s alleged right to perform abortions and to practice medicine at his office within the Village of Hempstead. The defendant Village cross-moves for a preliminary injunction to restrain the plaintiff, pendente lite, from com *483 mitting ‘6 justifiable abortional acts ’ ’ at places not permitted by the aforesaid ordinance.
The plaintiff (Village of Hempstead) in Action No. 2, which is an action for a permanent injunction, seeks a preliminary injunction to restrain the defendant therein, Bill Baird Center, Inc., pendente lite, from the performance of ‘ ‘ justifiable abortional acts ” at its premises or elsewhere within the Village of Hemp-stead, contrary to the provisions of the aforesaid ordinance.
Charles Robin (plaintiff in Action No. 1) is a physician specializing in obstetrics and gynecology, who maintains an office in the premises of defendant (Action No. 2) Bill Baird Center, Inc. (hereinafter “ Baird”), which are located within the geographical limits of the Incorporated Village of Hempstead, a municipal corporation (hereinafter “ Village ”).
On March 17, 1971, the Village adopted the subject ordinance, which was effective immediately, pursuant to which the performance of ‘ ‘ justifiable abortional acts ’ ’, as defined by subdivision 3 of section 125.05 of the Penal Law was limited, within the boundaries of the Village, to “ a hospital duly licensed and accredited under the New York State Department of Health, and having equipment and facilities acceptable to the State Hospital Review and Planning Council.”
Plaintiff Robin has admittedly performed ‘ ‘ justifiable abortional acts ” at Baird’s premises, not a hospital, both before and after the enactment of this ordinance. With respect to Action No. 2, although Baird denies that it has performed abortions or that it can do so, it does not deny that its premises have been and are being used by Dr. Robin for the performance of abortions.
By its answer in Action No. 1 the Village has asserted certain affirmative defenses and a counterclaim which seeks, among other things, a declaration that the challenged ordinance is valid and constitutional, and a permanent injunction against the plaintiff.
The plaintiff Robin contends that the Village ordinance (1) is in conflict with section 125.05 of the Penal Law, as amended, which it is claimed has pre-empted the field of legislation relative to abortion; (2) is an abuse of the police powers authorized by the Villagé Law; and (3) is unconstitutional.
In support of the first of the above positions, the plaintiff cites the case of Jewish Consumptives’ Relief Soc. v. Town of Woodbury (230 App. Div. 228, affd. 256 N. Y. 619), which is claimed to be almost squarely in point with the instant casé. There it was held that a town could not, by a zoning ordinance, prohibit the establishment within its boundaries of an institution authorized by the State’s Public Health Law. The ordinance in that instance *484 excluded the erection of a tuberculosis hospital from any zoning district in the town, and it therefore was held to be in conflict with the State’s statute permitting such erection. In that case, however, the court distinguished prohibition from regulation, stating (p. 235): “If the Public Health Law dealt only with ‘ establishment ’ and the town had passed an ordinance which limited the place where such institution might be erected within its boundaries, then, if such limitation were for the benefit of the health, morals and welfare of the people, there could be no question about it. But here there is an unqualified prohibition.” (Emphasis supplied.)
The court cannot agree with the plaintiff’s contention that the subject Village ordinance is in conflict with the State statute. Initially, it must be noted that this ordinance does not prohibit the performance of a “justifiable abortional act” within the Village, but merely regulates the performance of such acts by limiting the locations at which they may be performed. It does not prohibit that which the State law permits, and so is not in conflict therewith.
Furthermore, section 125.05 of the Penal Law does ,not purport to regulate but is solely definitive insofar as the subject of ‘ ‘ justifiable abortional acts ’ ’ is concerned. It does no more than define the term. The mere definition of the term in the Penal Law, without provision for State-wide regulation, does not constitute, in this court’s opinion, a pre-empting by the State of the field of regulatory legislation with respect to abortions.
Clearly in an area such as abortions, which involve matters, of public health, safety and welfare, State-wide regulation may have been more desirable than a multiplicity of local regulations. However, the failure of the Legislature — whether by design or oversight — to provide any State-wide regulation of the peformance of abortions on demand cannot be construed as suggesting or presuming a legislative intent that the State has pre-empted this field of regulation.
Proceeding now to plaintiff’s second contention relating to the Village’s police powers, under subdivision 59 of section 89 of the Village Law the board of trustees of a village is authorized to: ‘1 enact any ordinances, not inconsistent with existing law which shall be deemed expedient or desirable for the good government of the village * * * the protection of its property, safety and health of its inhabitants * * * the preservation of public health * * * and may generally exercise all the powers granted to the village.”
In discussing,police power in Matter of Jacobs (98 N. Y. 98, 108) the Court of Appeals said: ‘‘ That power is very broad and *485 comprehensive, and is exercised to promote the health, comfort, safety and welfare of society.” It would follow that a village’s exercise of its police power is proper and valid if there is a fair, just and reasonable connection between the exercise of that power and the promotion of the health, comfort, safety and welfare of its inhabitants.
In construing the ordinance under attack here, the court does not deem that the concern of the Village of Hempstead in enacting the ordinance was necessarily limited to the female inhabitants upon whom ‘ ‘ justifiable abortional acts ’ ’ may be performed. This concern implicitly and properly extends to live births which are known to result from such acts. The validity of this concern is' acknowledged by the plaintiff Robin, who in his affidavit states that “ during the pendency of this litigation the health and welfare and in fact the life or death of many women, as well as the product of conception, would be in jeopardy ” (emphasis supplied), and that he “would not perform abortions in his office on patients who are pregnant over ten (10) weeks ”. The occurrence of such live births renders proper the concern of the village that hospital facilities be available to sustain the infant’s life.
In the arguments advanced herein, no importance has been attributed to the interests which may be possessed by the embryo or fetus carried by the pregnant woman. The right of an embryo or fetus to life which supersedes even the religious freedom of the mother, and the existence of a State interest in this right, has been upheld in Raleigh Fitkin-Paul Morgan Mem. Hosp. v. Anderson (42 N. J. 421, cert. den. 377 U. S. 985 [1964]). In the recent case of Steinberg v. Brown (321 F. Supp. 741, 746-747 [Ohio, W. D., 1970]), the court flatly stated that “ Once human life has commenced, the constitutional protections found in the Fifth and Fourteenth Amendments impose upon the state the duty of safeguarding it. ’ ’ In recent months the Federal courts in North Carolina and Louisiana have also affirmed the State’s interest in the unborn’s right to life. (See Corkey v. Edwards, 322 F. Supp. 1248 [W. D., N. Car., 1971] ; Rosen v. Louisiana State Bd. of Medical Examiners, 318 F. Supp. 1217 [E. D., La., 1970.]. But see contra Babbitz v. McCann, 310 F. Supp. 293 [E. D., Wis., 1970] ; Roe v. Wade, 314 F. Supp. 1217 [N. D., Texas, 1970] ; Doe v. Bolton, 319 F. Supp. 1048 [N. D., Georgia, 1970] ; and Doe v. Scott, 321 F. Supp. 1385 [N. D., Ill., 1971].)
In this State, in Kelly v. Gregory (282 App. Div. 542, 543-544) the basis of the rejection on the part of modern tort law of the antiquated notion of the common law that an unborn child is merely part of his mother’s body is summarized as follows:
*486 “ We ought to be safe in this respect in saying that legal separability should begin where there is biological separability. We know something more of the actual process of conception and foetal development now than when some of the common-law cases were decided; and what we know makes it possible to demonstrate clearly that separability begins at conception.
“ The mother’s biological contribution from conception on is nourishment and protection; but the foetus has become a separate organism and remains so throughout its life. That it may not live if its protection and nourishment are cut off earlier than the viable stage of its development is not to destroy its separability ; it is rather to describe the conditions under which life will not continue. ’ ’
As Professor Patterson of Columbia Law School concludes in “ Law in a Scientific Age ” (Columbia Press, 1963 [Carpentier Lecture]), “ The meaning and scope of even such a basic term as ‘ legal person ’ can be modified by reason of changes in scientific facts — the unborn child has been recognized as a legal person, even in the law of torts.” (See Prosser, Torts [3d ed.], 1964.)
The Village requirement that “ justifiable abortional acts ” be performed only in a duly licensed and accredited hospital might also be construed as a means of regulating the care and disposition of fetal remains. It has been held that the regulation of the disposition of dead human bodies is a proper exercise of the police power (Heimerle v. Village of Bronxville, 168 Misc. 783, 792, affd. 256 App. Div. 993). The fact that successful abortions result in the production of ‘ ‘ dead human bodies ’ ’ is apparent from the provisions of the Public Health Law (art. 41, tit. V) which require the registration of fetal deaths by the filing of fetal death certificates (§ 4160) and prescribe, in the case of fetal deaths occurring after the 20th week of pregnancy, that the remains resulting therefrom (§ 4162) shall be subject to the provisions of the article applicable to the removal, transportation and burial of the body of a deceased person. Since '‘ justifiable abortional acts ’ ’, by definitiofi, include the termination of pregnancies of up to 24 weeks’ duration, the fetal remains in those cases involving uterogestation of between 20 and 24 weeks would require disposition as prescribed for the body of a “ deceased person ’ ’.
A recent law review article commented as follows: ‘ ‘ There are some observers who claim that the moral consensus has already broken down. Indeed, America may have entered a situation of anomie, that social climate characterized by a confusion of goals produced by a breakdown in the consensus. The *487 individual simply does not know what is right and what is wrong. In the morning, he vigorously proclaims the ethical-legal principle of the sanctity of life in a protest against war; in the afternoon, he subverts that principle in a protest against anti-abortion laws.” (Robert M. Byrn, Abortion-on-Demand: Whose Morality ?, Notre Dame Lawyer, vol. 46, No. 1, p. 39, Fall, 1970.)
Whatever the state of our society’s sense of ethics may be, and regardless of the extent to which the consensus about what is good or bad may have broken down, it is nonetheless as legitimate an exercise of the police power to regulate where 1 £ justifiable abortional acts ” may be legally performed as it is to regulate where wagers on horses may be legally placed.
For these reasons this court cannot find that the ordinance which is under attack here constitutes an abuse of the police powers authorized by the Village Law.
Insofar as the question of constitutionality is concerned, the court in Defiance Milk Prods. Co. v. Du Mond (309 N. Y. 537, 540) set forth the general rule, which has become well settled, that: £ 1 Every legislative enactment carries a strong presumption of constitutionality including a rebuttable presumption of the existence of necessary factual support for its provisions.” The presumption of constitutionality attaches not only to statutes but to ordinances as well (Jahn v. Berzon, 255 App. Div. 1023 ; Town of Babylon v. Conte, 61 Misc 2d 626). The presumption of the validity of legislative enactments is ££ so strong as to demand of those who attack them a demonstration of invalidity beyond a reasonable doubt, and the courts strike them down only as a last unavoidable result.” (Matter of Van Berkel v. Power, 16 N Y 2d 37, 40 ; see, also, Nettleton Co. v. Diamond, 27 N Y 2d 182, 193.)
Plaintiff Robin has not, in the opinion of the court, sustained his heavy burden of overcoming the presumption of constitutionality enjoyed by the ordinance. The fact that by reason of the ordinance he might not enjoy certain financial profits which might otherwise be available to him is not sufficient to warrant a finding of unconstitutionality.
For the reasons hereinabove stated, this court has concluded that the plaintiff’s right to the ultimate relief sought in Action No. 1 is in serious doubt. Therefore the motion for a temporary injunction is denied, for it is well settled that the drastic remedy of temporary injunction may not be granted unless the court is satisfied that the right to the ultimate relief requested is not in doubt. Although for the purposes of determining these motions this court has deemed it necessary to consider the actions and *488 counterclaims underlying the instant motions, the court is not called upon at this time and does not reach an ultimate determination of these actions and counterclaims.
In view of the court’s denial of the plaintiff’s motion in Action No. 1 for a temporary injunction to restrain the Village from enforcing the challenged ordinance, and the Village’s inherent power to enforce its duly enacted ordinance, there is no necessity to grant to the Village the preliminary injunction which it seeks against the plaintiff Dr. Robin in Action No. 1 and against the defendant Baird in Action No. 2. Accordingly, the Village’s applications for such relief are denied.